QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sam S. Stake (Cal. Bar No. 257916)
samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6600

QUINN EMANUEL URQUHART & SULLIVAN, LLP
David LeRay (*pro hac vice*)
davidleray@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Steig D. Olson (*pro hac vice*)
steigolson@quinnemanuel.com
Jessica Y. Wu (*pro hac vice*)
jessicawu@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone:    (212) 849-7000

*Attorneys for Plaintiff Rocket Resume, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rocket Resume, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> BOLD LIMITED, BOLD LLC, BOLD HOLDINGS LLC, DOUG JACKSON, JAMIE FREUNDLICH and HEATHER WILLIAMS <br><br> Defendants. | Case No. 5:26-cv-02852-BLF <br><br> **ROCKET RESUME'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:  November 19, 2026 <br> Time:  9:00 AM <br><br> The Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ..............................................................................................3

LEGAL STANDARD ..........................................................................................................5

ARGUMENT .......................................................................................................................5

I.  DEFENDANTS' REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED
    IN PART ...................................................................................................................5

II. ROCKET RESUME PLAUSIBLY ALLEGES MONOPOLIZATION AND
    ATTEMPTED MONOPOLIZATION CLAIMS ......................................................6

    A.  Rocket Resume Plausibly Alleges Anticompetitive Conduct and Antitrust
        Injury ...........................................................................................................7

    B.  Rocket Resume Plausibly Alleges BOLD Violates Specific Antitrust Tests...........11

        1.  BOLD's Manipulation of Sham Entities and the Google Ad Auction
            Amounts to Exclusive Dealing................................................................12

        2.  Defendants' Predatory-Bidding Argument Misses the Mark......................14

        3.  BOLD's Litigation Campaign Is Actionable ..............................................15

    C.  The Complaint Plausibly Alleges Monopoly Power in a Relevant Market .............19

III. ROCKET RESUME PLAUSIBLY ALLEGES A SECTION 1 CONSPIRACY
     (COUNT III) ..........................................................................................................22

IV.  THE COMPLAINT PLAUSIBLY ALLEGES A UCL CLAIM (COUNT IV)...................22

V.   THE INDIVIDUAL DEFENDANTS ARE PROPERLY NAMED .................................24

CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016) ...............................................................................13

*AlphaCard Sys. LLC v. Fery LLC*,
   2024 WL 4957185 (D.N.J. Feb. 29, 2024) ............................................................10

*Anesthesia Assocs. of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*,
   2021 WL 4169711 (E.D. Mich. Sept. 14, 2021).....................................................15

*Apple Inc v. Psystar Corp.*,
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) .................................................................21

*Arcell v. Google LLC*,
   2025 WL 210877 (N.D. Cal. Jan. 16, 2025)...........................................................24

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
   2018 WL 11230167 (N.D. Cal. May 21, 2018)..................................................16, 17

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985)...................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................5

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ..................................................................................8

*Brown v. Amazon.com, Inc.*,
   2023 WL 5793303 (W.D. Wash. Sept. 7, 2023)......................................................20

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962)..................................................................................................19

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (Cal. 1999).....................................................................................23

*Clayco Petroleum Corp. v. Occidental Petroleum Corp.*,
   712 F.2d 404 (9th Cir. 1983) ....................................................................................5

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962)...................................................................................................8

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
   150 F.4th 1056 (9th Cir. 2025) ................................................................................*passim*

*Drop Dead Co. v. S.C. Johnson & Son, Inc.*,
   326 F.2d 87 (9th Cir. 1963) ............................................................................................8

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
   111 F.4th 337 (4th Cir. 2024) ......................................................................................7, 8

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992)....................................................................................................8, 12

*Epic Games, Inc. v. Apple Inc.*,
   559 F. Supp. 3d 898 (N.D. Cal. 2021) ..........................................................................21

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ...............................................................................6, 7, 23

*Facebook, Inc. v. BrandTotal Ltd.*,
   2021 WL 2354751 (N.D. Cal. June 9, 2021)................................................................23

*Funai Elec. Co., Ltd. v. LSI Corp.*,
   2017 WL 1133513 (N.D. Cal. Mar. 27, 2017)..........................................................16, 17

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
   343 F.3d 1000 (9th Cir. 2003) ......................................................................................10

*High Tech. Careers v. San Jose Mercury News*,
   996 F.2d 987 (9th Cir. 1993) ........................................................................................20

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   485 F. Supp. 3d 1137 (N.D. Cal. 2020) ........................................................................18

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ......................................................2, 16, 17, 18

*In re California Bail Bond Antitrust Litigation*,
   2020 WL 3041316 (N.D. Cal. Apr. 13, 2020) ...........................................................24, 25

*In re Dairy Farmers of Am. Cheese Antitrust Litig.*,
   767 F. Supp. 2d 880 (N.D. Ill. 2011) ............................................................................25

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ..................................................................................14, 16

*In re Google Play Store Antitrust Litigation*,
   2024 WL 4438249 (N.D. Cal. Oct. 7, 2024)..................................................................22

*In re Juul Labs, Inc., Antitrust Litig.*,
   555 F. Supp. 3d 932 (N.D. Cal. 2021)............................................................................25

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ................................................................................22

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...................................................................................6

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) ...................................................................................5

*Le v. Zuffa, LLC*,
2023 WL 5085064 (D. Nev. Aug. 9, 2023) .............................................................11

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ...................................................................................6

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
699 F. Supp. 3d 1086 (D. Or. 2023) ......................................................................21

*Maximum Availability Ltd. v. Vision Sols., Inc.*,
2010 WL 11508470 (C.D. Cal. Dec. 16, 2010) ......................................................21

*McWane, Inc. v. FTC*,
783 F.3d 814 (11th Cir. 2015) .....................................................................12, 13, 14

*Monarch Marking Sys. v. Duncan Parking Meter Maint. Co.*,
1986 WL 3625 (N.D. Ill. Mar. 13, 1986).................................................................25

*Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co., Ltd.*,
467 F. Supp. 841 (N.D. Cal. 1979).....................................................................24, 25

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*,
468 U.S. 85 (1984)...................................................................................................7

*Newcal Indus., Inc. v. Ikon Off. Sols.*,
513 F.3d 1038 (9th Cir. 2008) .....................................................................19, 20, 21

*Novation Ventures, LLC v. J.G. Wentworth Co.*,
156 F. Supp. 3d 1094 (C.D. Cal. 2015) ...............................................................8, 9

*Novation Ventures, LLC v. J.G. Wentworth Co.*,
711 F. App'x 402 (9th Cir. 2017) ............................................................................9

*Ojmar US, LLC v. Sec. People, Inc.*,
2017 WL 5495912 (N.D. Cal. Nov. 16, 2017) ........................................................20

*Oliver v. SD-3C LLC*,
751 F.3d 1081 (9th Cir. 2014) .................................................................................18

*Pace Indus., Inc. v. Three Phoenix Co.*,
813 F.2d 234 (9th Cir. 1987) ...................................................................................18

-iv-

*Pac. Steel Grp. v. Com. Metals Co.*,
600 F. Supp. 3d 1056 (N.D. Cal. 2022) ................................................................................11, 14

*PLS.Com, LLC v. National Association of Realtors*,
32 F.4th 824 (9th Cir. 2022) ...............................................................2, 9, 10, 11, 13

*Power Analytics Corp. v. Operation Tech., Inc.*,
2017 WL 11486807 (C.D. Cal. Dec. 7, 2017) ...................................................................13

*P & M Servs., Inc. v. Gubb*,
2008 WL 4185903 (E.D. Mich. Sept. 8, 2008).................................................................18

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
638 F. App'x 43 (2d Cir. 2016) ...............................................................................................8

*Reilly v. Apple Inc.*,
578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...............................................................................10

*Relevant Group, LLC v. Nourmand*,
116 F.4th 917 (9th Cir. 2024) ...............................................................................................18

*Samsung Elecs. Co. v. Panasonic Corp.*,
747 F.3d 1199 (9th Cir. 2014) ...............................................................................................18

*Synopsys, Inc. v. ATopTech, Inc.*,
2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) .....................................................................23

*Talece Inc. v. Zheng Zhang*,
2021 WL 1749917 (N.D. Cal. May 4, 2021)..........................................................................5

*Todd v. Exxon Corp.*,
275 F.3d 191 (2d Cir. 2001)...................................................................................................19

*United States v. Dentsply Int'l, Inc.*,
399 F.3d 181 (3d Cir. 2005)...................................................................................................12

*United States v. Joyce*,
895 F.3d 673 (9th Cir. 2018) .................................................................................................22

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
549 U.S. 312 (2007)................................................................................................................14

*Wi-Lan, Inc. v. LG Elecs., Inc.*,
382 F. Supp. 3d 1012 (S.D. Cal. 2019).................................................................................24

*Xerox Corp. v. Media Scis. Int'l, Inc.*,
511 F. Supp. 2d 372 (S.D.N.Y. 2007) .....................................................................................8

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012)...................................................................................................13

-v-

*ZombieBox Int'l Inc. v. Generac Power Sys. Inc.*,
    721 F. Supp. 3d 798 (D. Ariz. 2024) ...............................................................................11

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq*. ................................................................22, 23, 24

15 U.S.C. §§ 1-7 ...........................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8(d) .........................................................................................................22

Fed. R. Civ. P. 12(b)(6)................................................................................................5, 18, 19

**INTRODUCTION**

For over a decade, BOLD and certain of its executives ("Defendants") have orchestrated an anticompetitive scheme to monopolize the U.S. Online Resume-Building Platforms Market. In this market, Google Search is the vital distribution channel to reach customers. But by manipulating a web of sham entities—with nominal headquarters in far-flung places like Switzerland, Bermuda, and Puerto Rico—BOLD circumvents Google's policies to lock up the lion's share of how online resume builders can reach their customers. BOLD does so by using its sham entities to occupy key search positions, crowding out other competitors. To further keep its competitors down, BOLD supplements its campaign by filing specious copyright lawsuits against them. Through this scheme, BOLD has been able to achieve and maintain a market share of over 80% while enjoying supracompetitive profits.

Defendants' motion to dismiss ("Mot.") relies on willful blindness to the Complaint's detailed allegations. *First*, they recast BOLD's scheme as a legitimate business strategy that Rocket Resume and others could just as easily pursue. But this argument is nothing more than smoke and mirrors, deliberately ignoring that BOLD's scheme does not rely on competition on the merits. Instead, it is predicated on an extensive, systematic effort to circumvent Google's policies that are designed to prevent exactly what BOLD is doing—locking up virtually all its distribution channel under one large company's umbrella. These policies reflect Google's understanding that, if left unchecked, large companies like BOLD could flood its auctions by bidding under different aliases to foreclose smaller rivals from securing any traffic. Google's policies, along with the antitrust laws, both aim at the same target of preventing anticompetitive conduct. Defendants' argument that BOLD's rivals should copy its brazenly deceptive scheme in order to compete against BOLD only illustrates the extent to which it has corrupted the competitive process. These arguments fail.

*Second*, Defendants try to disaggregate Rocket Resume's allegations into isolated pieces and argue that no single piece fits into a familiar antitrust label. This argument is another red herring, mischaracterizing both the law and Rocket Resume's allegations. Not only does BOLD's conduct amount to *de facto* exclusive dealing, but Rocket Resume's allegations must be considered as a whole and plainly state a monopolization claim. As detailed in the Complaint, Defendants' utter

-1-

dominance of this market was not achieved by competition on the merits, but through a devious scheme to subvert competition, backstopped by baseless, crippling lawsuits against smaller rivals. And BOLD's dominance has led to the exact harms that the antitrust laws are meant to prevent: higher prices, less choice, reduced output, and lower product quality. *PLS.Com, LLC v. National Association of Realtors*, 32 F.4th 824, 840 (9th Cir. 2022) (the Sherman Act prohibits conduct that is "designed to drive existing competitors out of the market or to prevent new competitors from entering, thus leaving consumers with fewer choices, higher prices, and lower-quality products").

Indeed, as the Complaint explains, BOLD's dominance has led to frustrated consumers, who are fooled into thinking they have genuine choices, yet who are systematically ripped off by BOLD's high prices and deceptive pricing practices. As one consumer after another is swindled by BOLD and the various entities it controls, the whole market suffers. Regulators and market commentators are also fooled into thinking the market is competitive, with diverse options. For example, the Complaint appears to be the first to uncover that, in addition to its dozens of other shell entities, BOLD also controls Resume Companion, Resume Genius, and Resume-Now too through the sham entities Sonaga Tech Limited and NOW Limited. (¶¶86-94[1].)

*Third*, Defendants' argument that its copyright lawsuits are legitimate and immune from antitrust scrutiny fails. Consistent with the standard articulated in *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084 (N.D. Cal. 2007), the Complaint alleges that BOLD weaponizes copyright litigation in service of, and to reinforce, the same exclusionary ends as BOLD's anticompetitive sham bidding campaign. For any small rivals that make any inroads at all in this market, BOLD sues them into oblivion, using baseless copyright claims which BOLD alleges give rise to staggering damages. Nearly every rival but Rocket Resume has folded in response, with BOLD then acquiring its brand name and adding it into its scheme.

BOLD has dominated the market not through competition on the merits, but through breaking the rules that everyone else must follow. For these reasons, discussed further below, Defendants' Motion to Dismiss should be denied.

---

[1]  Herein, Complaint paragraphs will be cited as: "(¶___.)."

-2-

## FACTUAL BACKGROUND

**The Market.**  The Online Resume-Building Platforms Market (the "Market") consists of web-based platforms "that allow jobseekers to customize multiple resumes through easy-to-use interactive user interfaces." (¶49.)  No other tool is reasonably interchangeable with these platforms. (¶¶53-64.)  Online resume-builders reach customers almost entirely through one channel:  Google Search. (¶141.)  Unlike industries served by retail stores, direct sales forces, or word-of-mouth, this Market "depends almost entirely on search-based customer acquisition through Google," and "[t]here is no meaningful alternative path to reach customers at scale." *Id.*  Google divides its results into a small number of paid "sponsored" positions and free "organic" listings and allocates the sponsored slots through a real-time keyword auction. (¶¶9, 71-72.)  There are typically only three or four sponsored positions per search, and control of these "sponsored" positions has a direct impact on future control of "organic" positions due to the dependence on learnings derived from the ads space. (¶¶9, 82.)  Control of those slots is control of the Market.

**BOLD's monopolization.**  BOLD, through its scheme, seized and holds an estimated 80-90% share of the Market.  (¶¶76, 204.)  BOLD did not earn that share through competition on the merits.  It instead manufactures the appearance of a competitive market while operating as a monopolist. (¶¶8, 76, 106.)

**BOLD's web of sham entities.**  At the center of BOLD's scheme is its creation of a web of sham corporate entities, with fictitious headquarters in places like Switzerland, Bermuda, and Puerto Rico, which "operate under shared ownership and oversight, and with shared purpose." (¶2.)  BOLD discloses owning only a handful of brands.  (¶5.)  In reality it controls many more—including Resume Genius, Resume-Now, Resume Companion, Resume Help, Resume Builder, Resume Lab, and others, each held out to the public as a standalone competitor with its own website, logo, and domain. (¶¶5-6.)  These entities "offer functionally identical services, target identical customers, charge virtually identical prices, draw from identical content databases, and operate under unified management control." (¶7.)  The differences are "cosmetic," "just enough to fool customers."  (*Id.*)  The result is the "illusion of choice and competition":  jobseekers, Google, and regulators believe the Market is competitive when it is "rigged in Defendants' favor."  (*Id.*)

-3-

**BOLD forecloses competition.** BOLD deploys its sham entities to deceive Google and manipulate the auction:  because it secretly controls multiple brands, it bids on behalf of three or more "separate" entities, occupies "approximately 2.5 of the top advertising slots per search," wins the top spot "90% of the time," and spreads its cost across captured slots to achieve a blended cost-per-click no rival can match without operating at a loss.  (¶¶9, 13, 119-123.)  Google's "Unfair Advantage" and "Circumventing Systems" policies are designed to protect against the exact conduct in which BOLD is engaged.  (¶¶109-112.)  Google's Unfair Advantage policy prohibits "[u]sing the Google Network to gain an ***unfair traffic advantage over other participants in the auction***," including "[t]rying to show ***more than one ad*** for your business, app, or site in a single ad location," and explicitly states that "***[e]ach website or app that you promote should offer distinct value to users***." *Unfair Advantage*, Google, https://support.google.com/adspolicy/answer/15936768?hl=en.  Google's Circumventing Systems policy similarly prohibits "[e]ngaging in practices that ***circumvent or interfere with Google's advertising systems and processes***, or attempting to do so." *Circumventing Systems*, Google, https://support.google.com/adspolicy/answer/15938075?hl=en.  Although the extent of BOLD's deception has made it impossible for Google to enforce these policies consistently, even in the few times that BOLD has been caught, it was able to further evade enforcement by changing the domain names of its entities.  (¶¶12, 117.)

**Litigation Weaponization.**  For the few small rivals that manage to capture any consumers at all, BOLD weaponizes copyright litigation:  for over a decade it has filed suits against rivals who gain any traction, threatening them with massive damages based on dubious (and in many cases entirely baseless) copyright claims, claiming that the rivals have improperly used common phrases that BOLD claims to own, diverting their resources, and forcing them to "cave" and sell to BOLD or "exit the market entirely."  (¶¶17, 151.)  For example, BOLD sued Resume Genius, Resume Companion, and Resume Direct. Each is now "either defunct as competitors or absorbed into BOLD's portfolio."  (¶18.)

**Market-Wide Harm.**  BOLD's scheme has caused massive market-wide harm, spreading BOLD's deceptive business model which can trick customers into spending hundreds of dollars for

-4-

a resume they built and downloaded once.  Frustrated consumers may try to shop elsewhere, without realizing they are just going right back to BOLD again.  (¶¶95-107.)

**Rocket Resume.**  Rocket Resume is "one of the few independent competitors that remains," holding only a single-digit share.  (¶¶8, 204.)  In February 2022, BOLD sued Rocket Resume, baselessly asserting a dubious copyright to claim Rocket Resume had somehow stolen its database and that Rocket Resume infringed BOLD's ownership of short, generic phrases like "hard worker," "good communication," "Microsoft Office," and "Google Ads."  (¶166.)  As discussed *infra* § II.B.3, because it emerged that BOLD itself copied much of the supposedly original content asserted against Rocket from public sources, BOLD was forced to substantially narrow the scope of its asserted copyright registration ***mid-litigation***, thus confirming the baseless nature of its original claims.  As a result of BOLD's conduct, Rocket Resume has suffered monetary harm "in the hundreds of millions of dollars."  (¶191.)

## LEGAL STANDARD

Rule 12(b)(6) only requires "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although courts will not infer liability based on allegations that are "implausible," defendants cannot disregard specific factual allegations by merely characterizing them as such.  *See Talece Inc. v. Zheng Zhang*, 2021 WL 1749917, at *4-5 (N.D. Cal. May 4, 2021) (Freeman, J.).  "[D]ismissals for failure to state a claim are disfavored in antitrust actions," *Clayco Petroleum Corp. v. Occidental Petroleum Corp.*, 712 F.2d 404, 406 (9th Cir. 1983), and must be accompanied by leave to amend unless amendment would be futile. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000).

## ARGUMENT

## I.     DEFENDANTS' REQUEST FOR JUDICIAL NOTICE SHOULD BE DENIED IN PART

Defendants ask the Court to take judicial notice of, and to incorporate by reference, a range of materials.  Mot. 7.  Rocket Resume does not object to the Court taking notice that these documents exist and say what they say.  But Defendants ask for more:  they ask the Court to accept as ***true*** disputed facts asserted within them, and to credit Defendants' characterizations of those documents

-5-

over Rocket Resume's well-pleaded allegations. That is patently improper. A court may not notice the **truth** of disputed facts asserted within a document. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("But the court did more than take judicial notice of *undisputed* matters of public record. The court took judicial notice of *disputed* facts stated in public records."). Similarly, incorporation by reference "is not a tool for defendants to short-circuit the resolution of a well-pleaded claim," and a court may not "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

Defendants repeatedly cross that line. For example, they invoke a third-party blog post (the "Sheets Article") for the **truth** of the assertion that the relevant market is a "crowded category with dozens or even hundreds of options." Mot. 3, 19. But the size and composition of the Market—and which products are reasonable substitutes for BOLD's—is a disputed question that will require economic analysis, and the Court may not treat one article's characterization, unalleged by Rocket Resume, as an established fact against Rocket Resume's contrary allegations. (¶¶42, 53-64.) Similarly, Defendants ask the Court to infer from the existence and terms of the parties' Binding Settlement Term Sheet that BOLD's prior lawsuit against Rocket Resume was not objectively baseless. Mot. 16-17. Whatever the Term Sheet recites, the legal significance BOLD attaches to it is precisely the kind of disputed inference that judicial notice cannot supply.

## II.    ROCKET RESUME PLAUSIBLY ALLEGES MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION CLAIMS

For monopolization claims, a plaintiff must plead monopoly power in the relevant market, anticompetitive conduct, and antitrust injury. *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1066-67 (9th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 272 (Mar. 23, 2026) (citations omitted). Monopoly power is the power "to control prices or exclude competition," and it "can be established either directly or indirectly." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (quotation omitted). A "plaintiff can plausibly allege that a defendant has monopoly power with … evidence of either supracompetitive pricing or reduced output." *CoStar*, 150 F.4th at 1068. Through indirect evidence, a plaintiff can allege monopoly power by showing "(1) 'that

-6-

the defendant owns a dominant share of that market,' and (2) 'that there are significant barriers to entry and ... that existing competitors lack the capacity to increase their output in the short run.'" *Id.* at 1070.  For attempted monopolization, a plaintiff must plead the defendant had specific intent to monopolize and a "dangerous probability" of achieving monopoly power.  *Id.* at 1066-67.  Rocket Resume's allegations satisfy all elements across both monopolization and attempted monopolization claims.  (¶¶42, 83, 179.)  While the above elements pertain to Section 2, cases analyzing Section 1 are informative because the analysis "is similar."  *Epic*, 67 F.4th at 998 ("[T]he analysis under section 2 is similar to that under section 1").

A.     **Rocket Resume Plausibly Alleges Anticompetitive Conduct and Antitrust Injury**

Conduct violates Section 2 when it "tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way."  *CoStar*, 150 F.4th at 1072; *see Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985) (a firm "attempting to exclude rivals on some basis other than efficiency" behaves "predator[ily]"). By breaking the rules of the road to lock up the critical distribution channel, BOLD impairs its competitors not by building a better product, but by denying competitors access to the Market itself. That, in conjunction with BOLD's weaponization of copyright litigation, constitutes anticompetitive conduct and the type of "foreclosure to competition" that "§ 2 seeks to proscribe."  *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 366 (4th Cir. 2024); *see also Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 106-07 (1984) (finding "anticompetitive consequences … apparent" where "[i]ndividual competitors lose their freedom to compete" and "[p]rice is higher and output lower than they would otherwise be, and both are unresponsive to consumer preference").

At the core of BOLD's scheme, BOLD flouts the rules of the Market's critical distribution channel by secretly bidding for ad positions under dozens of aliases.  (¶¶108-118.)  This prevents BOLD's rivals from reaching a meaningful number of customers and scaling in a manner that permits price and product competition against BOLD.  Customers ***think*** they are shopping around; unbeknownst to them, they are choosing between BOLD, BOLD, and BOLD.  (¶106.)  Google

-7-

*thinks* different companies are bidding for its advertising spots—its policies prohibit double-serving—but BOLD manipulates Google's auction with its near-identical sham entities to occupy the top spots. (¶¶115-118.)  This allows BOLD to lock up nearly all customers sourced through Google Search—the critical channel for customer acquisition—making legitimate competition impossible. (¶¶141-146.)  The cases Defendants cite (Mot. 11), where courts found no market foreclosure resulting from the challenged conduct, are therefore inapposite. *See, e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1201 (9th Cir. 2012) (plaintiffs disavowed any intent to argue the conduct foreclosed rivals from entering or participating).

Defendants attempt to rewrite Rocket Resume's Complaint, analogizing Rocket Resume's claims to cases where Section 2 violations were premised on false-advertising, material misrepresentation, disparagement, or trademark claims. *See* Mot. 8-12.  *See, e.g.*, *Drop Dead Co. v. S.C. Johnson & Son, Inc.*, 326 F.2d 87, 95 (9th Cir. 1963) (trademark); *Novation Ventures, LLC v. J.G. Wentworth Co.*, 156 F. Supp. 3d 1094, 1104 (C.D. Cal. 2015) (false advertising); *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 638 F. App'x 43, 46 (2d Cir. 2016) (Lanham Act); *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 382 (S.D.N.Y. 2007) (disparagement).  But Rocket Resume does not premise its Section 2 violation on any of these predicate claims.  And in any event, "Section 2 focuses on anticompetitive conduct, not on court-made subcategories of that conduct." *Duke Energy Carolinas*, 111 F.4th at 354; *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466-67 (1992) ("Legal presumptions that rest on formalistic distinctions rather than actual market realities are generally disfavored in antitrust law.  This Court has preferred to resolve antitrust claims on a case-by-case basis, focusing on the 'particular facts disclosed by the record.'").  The allegations must be taken as a whole, *see Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962), and together they show that BOLD's scheme is anticompetitive, regardless of how it is labeled.

Defendants' piecemeal approach ignores the crux of the conduct: BOLD's use of anticompetitive tactics to foreclose the Market's critical distribution channel.  Tellingly, nowhere in their motion do Defendants directly address Google's "Unfair Advantage" or "Circumventing Systems" policies, which prohibit precisely what BOLD does—using coordinated bids across sham

-8-

entities to foreclose this channel. (¶¶110-112.)  Rather, to the extent Defendants acknowledge Google has any policy at all, they suggest, circularly, that the Court should assume that BOLD complies with it because BOLD has evaded significant consequences thus far.  Mot. 12.  But the existence of these policies—and Google's attempts to enforce them against BOLD—confirm that BOLD's conduct is neither permitted nor procompetitive; that BOLD has repeatedly evaded that enforcement by switching domain names is precisely why Google's private policing cannot substitute for the relief Rocket Resume seeks.  (¶¶115-117.)

And it is this conduct and its effects that distinguish one of BOLD's principal authorities, *Novation*.  In that case, the claim failed because the plaintiff "did not plausibly plead that the Wentworth Entities ***severely restricted or foreclosed [it] from competing in the market*** by preventing it from advertising its services." *Novation Ventures, LLC v. J.G. Wentworth Co.*, 711 F. App'x 402, 404 (9th Cir. 2017) (emphasis added).  Rocket Resume pleads exactly what the *Novation* plaintiff did not—foreclosure of the market's critical distribution channel, which severely restricted Rocket Resume from competing in the Market.  (¶¶141-146.)  While foreclosure here is nearly complete, "'a plaintiff need not allege that the exclusionary conduct has succeeded in displacing all competition' to 'adequately plead antitrust injury.'" *National Association of Realtors*, 32 F.4th at 841.  Moreover, unlike the plaintiff in *Novation*, Rocket Resume alleges concrete mechanisms that prevent it from effectively competing for Google ad positions:  BOLD's bidding strategy artificially increases rivals' bidding costs while discounting its own and prevents rivals from surfacing in the Market's critical distribution channel.  (¶¶134-140, 169-170, 183.)  *Cf. Novation Ventures*, 156 F. Supp. 3d at 1102 (finding plaintiff does not suggest that it "could not bid for and be awarded one of the other remaining one or two available spots").

The Complaint also pleads antitrust injury.  BOLD's scheme constitutes "(1) unlawful conduct," that "(2) caus[ed] an injury to" Rocket Resume, "(3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *National Association of Realtors*, 32 F.4th at 833 (citation omitted).

BOLD's conduct easily satisfies each.  As shown above, BOLD's scheme has foreclosed the market's critical distribution channel, leaving rivals unable to reach a meaningful number of

-9-

customers and otherwise scale in a manner that permits competition against BOLD. That conduct not only harms competition, but eliminates it.

BOLD's scheme has also harmed consumers. Consumers have been deprived of the ability to choose between product alternatives due to BOLD's lock up of Google and are instead stuck with lower market-wide output, BOLD's supracompetitive prices, and low-quality offerings. (¶¶179-181, 213.) *See also Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1010-11 (9th Cir. 2003) ("One form of antitrust injury is '[c]oercive activity that prevents its victims from making free choices between market alternatives.'"). BOLD has flooded the Market with a pricing model that often leads to consumers paying far more than intended, sometimes hundreds of dollars for a single resume. (¶¶97-99.) With BOLD having no effective competition, this practice is pervasive. *See National Association of Realtors*, 32 F.4th at 836 ("The antitrust laws assume that 'competition will produce not only lower prices, but also better goods and services.'"). BOLD even raised prices by 61% from July 2023 to March 2026 without losing market share (¶68), the hallmark of monopoly pricing. Because BOLD faces no competitive pressure to improve its products, dissatisfied customers who leave one BOLD brand are funneled to another, and its products stagnate. (¶¶99, 121-22, 183.) These and other allegations distinguish the conclusory pleadings in the cases Defendants cite. *See* Mot. 11; *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1108 (N.D. Cal. 2022) (finding allegations conclusory); *AlphaCard Sys. LLC v. Fery LLC*, 2024 WL 4957185, at *5 (D.N.J. Feb. 29, 2024) (finding claimant "failed 'to address how'" the "alleged anti-competitive conduct negatively impacted the overall competitive market").

To the extent Rocket Resume has adopted similar pricing, that does not indicate BOLD's fee structure is consistent with a competitive market—rather, it indicates how Rocket Resume cannot put downward pressure on prices because of its failure to grow market share. *See* Mot. 11. For the same reason, it is disingenuous for BOLD to suggest that its pricing scheme provides a competitive opening for Rocket Resume. Rocket Resume cannot effectively compete when it is excluded from reaching customers through Google Search. Rocket Resume does not benefit if BOLD's prices are supracompetitive if it cannot even reach customers for a sale.

-10-

Defendants argue that Rocket Resume lacks injury because it could "follow[] suit" and engage in the same "multi-brand ad-bidding" as BOLD. Mot. 15. But, without engaging in BOLD's anticompetitive conduct, Rocket Resume cannot "follow[] suit." A competitor's attempt to "respond to" another's "anticompetitive conduct with anticompetitive conduct of its own does not render such conduct procompetitive or efficient." *Le v. Zuffa, LLC*, 2023 WL 5085064, at *26 (D. Nev. Aug. 9, 2023).

Moreover, because BOLD captures the customer regardless of which of its brands is clicked, it can profitably bid up every sponsored position to levels no single rival can match, spreading its cost across the brands it controls. (¶¶13, 15.) That BOLD profits from doing so is not a defense, as BOLD suggests, but it demonstrates how BOLD sustains its exclusionary conduct by raising rivals' costs. BOLD's profits thus show only that, unremarkably, it is profitable to act anticompetitively as a monopolist. *See Pac. Steel Grp. v. Com. Metals Co.*, 600 F. Supp. 3d 1056, 1078 n.6 (N.D. Cal. 2022) (observing "little (if any) daylight" between whether a defendant's conduct "raises costs sufficient to prevent [] rivals from growing into effective competitors" and whether it "forecloses competition or entry into the [] market."). BOLD compounds this cost-raising effect for rivals by burying them with copyright litigation, or the threat of it. (¶¶147-162.) BOLD's course of conduct has "prevented [rivals] from gaining a foothold in the market and makes it virtually impossible for new competitors to enter, leaving [jobseekers] with fewer choices, supra-competitive prices, and lower quality products." *National Association of Realtors*, 32 F.4th at 840 (finding plaintiff adequately alleged antitrust injury). (¶¶179-183.) Rocket Resume's inability to compete and exclusion from the market is exactly the type of injury that "the antitrust laws intend to prevent." *See ZombieBox Int'l Inc. v. Generac Power Sys. Inc.*, 721 F. Supp. 3d 798, 810 (D. Ariz. 2024).

**B.** **Rocket Resume Plausibly Alleges BOLD Violates Specific Antitrust Tests**

Although the Complaint's allegations should be taken as alleging one overarching unlawful course of conduct, Rocket Resume's allegations independently satisfy established categories for antitrust liability as well.

-11-

1.    **BOLD's Manipulation of Sham Entities and the Google Ad Auction Amounts to Exclusive Dealing**

BOLD deploys its army of sham entities to foreclose rivals from the Market's critical distribution channel:  Google Search.  (¶¶141-146.)  This conduct denies rivals access to the customers, who can only be reached through the critical channel.  The economic results of this conduct map one-for-one to the economic results of an exclusive dealing arrangement—any viable distribution is locked up, leaving rivals to the fringes of the market and unable to compete.

Defendants argue that there must be some specific "agreement to deal exclusively" so the Court can "assess" its features.  Mot. 13.  Defendants are wrong.  Under the antitrust doctrine of exclusive dealing, what matters is that, in practice, the challenged conduct "create[s] an exclusive relationship."  *CoStar*, 150 F.4th at 1073-74 (finding allegations of contract provisions which "d[id] not contain rebate or discount terms" sufficient for de facto exclusive dealing because the provisions "in practice lock[ed] brokers into exclusive agreements").  BOLD's conduct does create exclusivity.  In practice, BOLD is the only party—*i.e.,* the exclusive party—that can viably utilize Google paid advertisements.

The antitrust inquiry turns on the arrangement's real-world effect of unilateral exclusionary conduct that forecloses rivals, rather than "formalistic distinctions."  *McWane, Inc. v. FTC*, 783 F.3d 814, 834 (11th Cir. 2015) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466-67 (1992)).  For instance, in *McWane*, the monopolist foreclosed rivals not through a negotiated contract but through a unilateral program.  *Id.* at 833-34.  The Eleventh Circuit rejected the same argument Defendants attempt to advance here—that the absence of a formal, binding contract insulates the monopolist's conduct—and held that courts must weigh "market realities" rather than "formalistic distinctions."  *Id.* at 834-35 (agreeing that the "practical effect" of this conduct was to "make it economically infeasible for distributors to … switch to" a competitor and that this "arguably posed a greater threat to competition than a conventional exclusive dealing contract"); *see also CoStar*, 150 F.4th at 1073-74 ("Other courts of appeals have recognized de facto exclusive agreements. These agreements all contained 'specific features' that 'effectively coerced' parties to work exclusively with a dominant firm."); *see also United States v. Dentsply Int'l, Inc.*, 399 F.3d

-12-

181, 194 (3d Cir. 2005) (finding "a series of independent sales" which were "at-will" constituted an exclusive dealing arrangement); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012) ("An express exclusivity requirement, however, is not necessary … because we look past the terms of the contract to ascertain the relationship between the parties and the effect of the agreement 'in the real world.'").  As the Ninth Circuit has put it, "[t]o dismiss an exclusive dealing claim" on the basis that there is no formal contract which expressly requires exclusivity "would be the type of overly formalistic rule that the Supreme Court has cautioned against in antitrust cases."  *CoStar*, 150 F.4th at 1073.

BOLD's conduct forecloses rivals from the channel like any formal exclusive contract would—which goes to the "practical effect" the antitrust laws police, regardless of any signed term.  *See ZF Meritor*, 696 F.3d at 289 (unlawful "foreclos[ure]" of "a substantial share" of the market that would "otherwise have been available for rivals" is exclusionary).  As there are no viable "alternative channels of distribution" in the Market, rivals like Rocket Resume are "deprived … of the sales and revenue needed to invest" in product innovation and "prevented … from emerging as an effective competitor who could challenge" BOLD's "supracompetitive prices."  *McWane*, 783 F.3d at 839. (¶¶142-145.)  This injures Rocket Resume and harms the competitive process by reducing price competition and consumer choice, and degrading product quality.  *National Association of Realtors*, 32 F.4th at 840.

Defendants' authorities are distinguishable, as the plaintiffs in those cases did not show the defendant's conduct "substantially foreclosed dealing with [rivals]," *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1181 (9th Cir. 2016), or that the plaintiff "plausibly allege[d] that the agreements have the effect of 'foreclos[ing] competition in a substantial share of the line of commerce affected,'" *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 11486807, at *12 (C.D. Cal. Dec. 7, 2017).  Here, BOLD's conduct has foreclosed competition in a vital distribution channel, Google Search.  (¶186.)  As BOLD's scheme has been ongoing for over a decade and has resulted in a compounding effect within organic search (¶83), BOLD's conduct is also not "short in duration" or "easily terminable."  *See* Mot. 13; *see also McWane*, 783 F.3d at 833-35 (rejecting argument that a program was "presumptively legal" because it was "short-term and voluntary").

-13-

Lastly, given that BOLD's conduct violates Google's own policies, (¶110), BOLD's recasting of its ongoing deception and policy violations as permissible is disingenuous.  Mot. 8; *see supra* § II.A.  In any event, Rocket Resume alleges Google has enforced its policies against BOLD in some cases, but BOLD responded with technical changes to its domain names to evade further enforcement.  (¶116.)  These allegations "call[] for enough fact to raise a reasonable expectation that discovery will reveal evidence of" this conduct and, "if taken as true, plausibly establish" Rocket Resume's claim.  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds").

### 2.    Defendants' Predatory-Bidding Argument Misses the Mark

Defendants argue that BOLD's conduct does not amount to stand-alone predatory bidding under *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007), but Rocket Resume does not bring a stand-alone predatory bidding claim.  *See* Mot. 12-13.  Rather, Rocket Resume alleges BOLD's double-serving is an effective means of foreclosure because it allows it to bid up Google's auction prices to levels no rival can rationally match, especially as BOLD's serial litigation forces rivals to divert their limited resources for their defense.  (¶¶13-15, 140, 151.)  *See supra* § II.A.  Conduct that raises rivals' costs is a recognized form of unlawful exclusion under Section 2.  *McWane*, 783 F.3d at 832 ("[A]n exclusive dealing arrangement can be harmful when it allows a monopolist to maintain its monopoly power by raising its rivals' costs sufficiently to prevent them from growing into effective competitors"); *see Pac. Steel Grp.*, 600 F. Supp. 3d at 1078 n.6 (citing *McWane* and observing "little (if any) daylight" between whether a defendant's conduct "raises costs sufficient to prevent [] rivals from growing into effective competitors" and whether it "forecloses competition or entry into the [] market.").  BOLD's arguments on below-cost pricing and monopsony power are thus irrelevant.

Nonetheless, BOLD's contention that its own profitability forecloses the claim, Mot. 13, is backwards.  Cost-raising exclusion is anticompetitive precisely because it can be profitable for the dominant firm while excluding rivals:  BOLD "can afford to operate at a loss to capture any

-14-

individual customer because the aggregate result of its overbidding is profitable." (¶15.) BOLD's own authority confirms the distinction. In *Anesthesia Associates of Ann Arbor, PLLC v. Blue Cross Blue Shield of Michigan*, the defendant profited by using "its buying power to keep the price of inputs … down." 2021 WL 4169711, at *9 (E.D. Mich. Sept. 14, 2021). BOLD does the opposite— it bids the price of the critical input *up*, to levels that force rivals to compete at a loss or cede the channel. (¶¶13, 134-140.)

### 3. BOLD's Litigation Campaign Is Actionable

BOLD furthers its scheme by its pattern of serial litigation, dating from as early as 2014 to as recently as March 2026. Defendants argue (Mot. 15) that Rocket Resume "cannot plausibly allege that BOLD's litigation activity is anticompetitive or caused it antitrust injury," that its crushing litigation campaign is unactionable under the *Noerr-Pennington* doctrine, and that its activity is time-barred anyway. These arguments fail.

At the pleading stage, the Court must credit Rocket Resume's plausible allegations that "BOLD has systematically deployed copyright infringement litigation against emerging competitors in the Market …, using meritless or weak legal claims to drain competitors' financial resources." (¶147.) Rocket Resume has explained how BOLD weaponizes its "Text Tuner Content" database ("TTC") to threaten and initiate copyright lawsuits that "impose enormous litigation costs on smaller competitors" posing a "competitive threat" to BOLD's monopoly, even without any evidence of copying. (¶¶18, 152.) Rocket Resume alleges BOLD's copyright claims are "threadbare …, spanning just around one page," that BOLD pursues "the same legal theories" against rivals, and that its claims of theft are meritless. (¶¶150-153, 163.)

As one example, BOLD asserted an extremely weak—if not entirely baseless—copyright claim against Rocket Resume contending Rocket Resume's resume-builder offered the same generic, unprotectable phrases also contained in BOLD's TTC—such as "hard worker" or "good communication." (¶166.) BOLD filed this suit as soon as Rocket Resume approached $10 million in annual revenue. (¶167.) However, the Court found BOLD "***failed to produce*** either direct evidence of copying or evidence showing that BOLD's TTC database and Rocket Resume's

-15-

database share similarities in their selection, coordination, or arrangement that would be probative of copying." Kreiner Decl. Ex. H at 7 (emphasis added).

At minimum, that BOLD initiated a copyright suit based on the use of generic key phrases—and failed to produce any evidence of copying compilations—raises a factual dispute about whether BOLD's serial copyright claims serve anticompetitive ends. Thus, Rocket Resume's allegations are sufficient at this stage. *See In re Gilead*, 536 F.3d at 1057. Defendants' argument that it had "probable cause" to file its suit is not sufficient to render the Complaint's allegations implausible at the pleading stage. *See* Mot. 18. In any case, BOLD's contention that its suit against Rocket was based upon "a collection of original job descriptions" (Mot. 5) is highly misleading. In truth, to sustain its overblown claims against Rocket, BOLD was forced to scramble to substantially narrow the scope of its asserted copyright registration ***mid-litigation***—effectively conceding that much of the supposedly "original" content asserted against Rocket ***was not in fact owned by BOLD*** and was, instead, "preexisting text" that BOLD itself copied from one of many public sources, as is common in the industry. Kreiner Decl. Ex. H at 3 (admitting that "preexisting text" was excluded from BOLD's supplemental registrations). In other words, BOLD's litigation was premised upon a copyright that BOLD ***knew*** consisted of material it had copied from other sources. BOLD's so-called "text theory" against Rocket was facially weak, and its claim that Rocket Resume necessarily must have copied from BOLD (as opposed to other sources) was baseless.

Contrary to Defendants' arguments, Rocket Resume does not have to meet a heightened pleading standard under the sham litigation exception of *Noerr-Pennington* because the test articulated in *Hynix Semiconductor Inc. v. Rambus* applies instead. 527 F. Supp. 2d 1084 (N.D. Cal. 2007). Under *Hynix*, courts in the Ninth Circuit have widely held that "otherwise protected litigation can be a part of an 'anticompetitive scheme' claim" if the court finds that "the other aspects of the scheme independently produce anticompetitive harms." *Id.* at 1097; *see also Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 11230167, at *9 (N.D. Cal. May 21, 2018) (Freeman, J.) ("This Court is persuaded by the reasoning of *Hynix* and will join those courts which have followed it" and collecting cases following *Hynix*); *Funai Elec. Co., Ltd. v. LSI Corp.*, 2017 WL 1133513, at *6 (N.D. Cal. Mar. 27, 2017) (Freeman, J.) (this Court denying motion to dismiss where plaintiff

-16-

adequately alleged defendants' prior lawsuits "were mechanisms to maintain the monopolies obtained by Defendants' misconduct").  Rocket Resume alleges BOLD's copyright litigation campaign is the "backstop" BOLD deploys when a rival manages to gain traction despite BOLD's foreclosure of the critical distribution channel.  (¶177.)  BOLD sues (or threatens to sue) to divert the smaller rival's resources from customer acquisition to legal defense.  (¶¶17, 151, 177.)  BOLD's copyright litigation operates in service of, and reinforces, the same exclusionary end as BOLD's sham-entity structure and auction conduct—excluding rivals from the Market.  (¶¶83-85, 151.)

Rocket Resume's allegations satisfy both steps of the *Hynix* test.  *First*, "the court must [] find that the other aspects of the scheme independently produce anticompetitive harms." *Hynix*, 527 F. Supp. 2d at 1097.  As discussed, BOLD's sham-entity scheme forecloses rivals from the Market's critical distribution channel and raises their costs to unsustainable levels—exclusionary conduct that harms competition wholly apart from any litigation.  *See supra* § II.A.  (¶¶13-15, 140-146.)

*Second*, the lawsuit must be "'causally connected' to the disputed anticompetitive conduct discussed in step one." *Arista*, 2018 WL 11230167, at *14 (quoting *Hynix*, 527 F. Supp. 2d at 1096-97).  Here,  BOLD's serial litigation is an enforcement arm of the same anticompetitive foreclosure scheme.  Just as the court in *Arista* concluded Cisco's petitioning activity "can reasonably be portrayed as the mechanism to carry out" its exclusionary scheme, *id.*, BOLD's litigation is the mechanism by which it defends its double-serving and coordinated bidding as alleged throughout the Complaint.  As the Complaint alleges, whenever "a competitor gains any market traction despite BOLD's other anticompetitive conduct, BOLD initiates copyright litigation with anticompetitive intent to divert that competitor's resources from customer acquisition to legal defense."  (¶151.)

That diversion is precisely the causal link this Court has recognized.  In *Funai*, this Court treated even good-faith litigation as causally connected to plaintiff's anticompetitive harm because the suits forced the plaintiff "to expend significant resources to defend those actions" and thus increased "costs of competing." *Funai*, 2017 WL 1133513, at *6.  Here, BOLD deploys litigation as "mechanisms to maintain the monopolies obtained by [its] misconduct" and effectuate its "hold-up power." *Id.*  Just as this Court considered the petitioning activity in *Funai* "as part of Defendants' alleged anticompetitive scheme," *id.*, BOLD's petitioning activity should be considered as part of

-17-

its anticompetitive scheme here.  That petitioning activity spans BOLD's 2014 suits against Mint Media and Su Jia through its 2022 suit against Rocket Resume and its March 2026 demand letter—each deployed to protect BOLD's monopoly.  (¶¶21, 148-49, 163, 176.)  *See supra* § II.A.

BOLD's reliance on the sham-litigation exception, and on *Relevant Group, LLC v. Nourmand*, 116 F.4th 917 (9th Cir. 2024), is misplaced.  *See* Mot. 15-18.  The sham exception asks whether a particular lawsuit is objectively baseless in isolation without any other anticompetitive conduct, and *Relevant Group* applies that inquiry to hold that specific CEQA petitions were not shams.  116 F.4th at 928, 931-32.  Under *Hynix*, the critical inquiry is whether serial lawsuits further a broader scheme whose non-petitioning components independently harm competition, such that the "gravamen" of the claim is the non-petitioning conduct.  *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1146 (N.D. Cal. 2020); *Hynix*, 527 F. Supp. 2d at 1097.  Here, the serial litigation Rocket Resume alleges similarly furthers BOLD's broader scheme, so the petitioning "is not sufficient to implicate the *Noerr-Pennington* doctrine" at all and whether any individual suit was a sham is beside the point.  *hiQ Labs*, 485 F. Supp. 3d at 1146.  *Relevant Group* does not address *Hynix*, and it was decided on summary judgment, on undisputed "predicate facts" consisting of "public legal filings and rulings," 116 F.4th at 932, a posture the Ninth Circuit has distinguished from the "laxer" Rule 12(b)(6) standard that governs here, *id.* at 931 n.6.

Finally, Defendants' argument that Rocket Resume's litigation theory is time barred also fails.  *Pace Industries* and *P & M Services* are inapposite:  each addressed a claim resting on a *single* lawsuit, where the filing was necessarily "the last overt act."  *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987); *P & M Servs., Inc. v. Gubb*, 2008 WL 4185903, at *5 (E.D. Mich. Sept. 8, 2008).  Rocket Resume's claim does not rest on any single suit.  It alleges an ***ongoing*** scheme to foreclose the Market's critical distribution channel, of which the litigation is one continuing component.

Under the continuing-violation doctrine, a limitations period restarts with each overt act that is "new and independent" and inflicts "new and accumulating injury on the plaintiff."  *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202-03 (9th Cir. 2014) (quoting *Pace Indus.*, 813 F.2d at 238); *see Oliver v. SD-3C LLC*, 751 F.3d 1081, 1085-86 (9th Cir. 2014) (reversing time-bar

-18-

dismissal at the pleading stage).  BOLD's overarching foreclosure of the critical distribution channel continues to the present:  BOLD forecloses rivals anew with each search-auction cycle, *see supra* § II.A, and each such overt act restarts the clock.  (¶¶143-146.)  And even limiting the inquiry to BOLD's litigation conduct, BOLD's March 25, 2026 demand—part of the same campaign to raise Rocket Resume's costs and exclude it from the Market—came weeks before this suit.  (¶¶21, 176.)

### C. The Complaint Plausibly Alleges Monopoly Power in a Relevant Market

Defendants next argue that Rocket Resume does not plausibly allege monopoly power within a relevant market.  But Rocket Resume adequately alleges an Online Resume-Building Platforms Market and that BOLD holds monopoly power (and/or a dangerous probability of achieving it) within it.  (¶¶42-75.)  Rocket Resume's pleading burden here is modest.  "There is no requirement that" the market allegations of an "antitrust claim be pled with specificity."  *Newcal Indus., Inc. v. Ikon Off. Sols.*, 513 F.3d 1038, 1045 (9th Cir. 2008).  "An antitrust complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect.  And since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial."  *Id.*; *see also Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) ("Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market").

Rocket Resume's alleged market easily meets the legal standards.  Rocket Resume explains in detail why Online Resume-Building Platform products are not substitutable with word processing software (*e.g.*, require content generation from scratch, etc.), AI chatbots (*e.g.*, require prompt generation, do not offer formatting assistance, etc.), professional resume writing services (*e.g.*, involves consultation process, etc.), resume building mobile applications (*e.g.*, different user experience, etc.), and career services offices (*e.g.*, require eligibility, etc.).  (¶¶53-64.)  Rocket Resume is not "tout[ing] [] benefits" and its alleged market meets the *Brown Shoe* factors in "examining such practical indicia as industry or public recognition …, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 325

-19-

(1962).  These allegations are more than sufficient.  *Brown v. Amazon.com*, Inc., 2023 WL 5793303, at *7 (W.D. Wash. Sept. 7, 2023) (finding that, while a defendant might "dispute[] the facts as pleaded in Plaintiffs' complaint, 'defining the relevant market is a factual inquiry ordinarily reserved for the jury'"); *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993) ("The proper market definition in this case can be determined only after a factual inquiry into the 'commercial realities' faced by consumers" (citation omitted)).

Indeed, in alleging that BOLD was able to increase prices by 61% without losing market share, Rocket Resume invokes a standard economic measure of cross-elasticity of demand and consumer substitutability.  (¶68.) *See* Mot. 19.  This allegation alone demonstrates the lack of substitutability between products in the Online Resume-Building Platforms market and those in others.  Rocket Resume's allegations go beyond mere suggestions of "certain desirable traits and features" and actually "demonstrate the absence of economic substitutability, the benchmark for a facially sustainable product market."  *See* Mot. 20, citing *Ojmar US, LLC v. Sec. People, Inc.*, 2017 WL 5495912, at *2 (N.D. Cal. Nov. 16, 2017) (plaintiff's allegations of a product's additional capabilities, without more, were insufficient to demonstrate an absence of economic substitutability between that product and others).

Defendants' remaining arguments are yet another misdirection, dressing up factual disputes as legal defects.  To the extent Defendants rely on sources outside of the pleadings to allege an alternative market exists, *see* Mot. 20, that is improper on a motion to dismiss.  *See supra* § I.  That a single article describes a "crowded category" (Mot. 19) does not invalidate Rocket Resume's allegations at the pleading stage.  *See Newcal*, 513 F.3d at 1045.  That is especially so because Rocket Resume cited that article to illustrate the extent of BOLD's deception—in other words, to illustrate how BOLD has ***fooled*** commentators into thinking there is a "crowded" market when really the "crowd" is all BOLD in disguise.  (¶100.)  Similarly, BOLD also claims (Mot. 20) some fatal mathematical contradiction between the Complaint's estimate that BOLD's wrongdoing affects $750 million in commerce and allegations that Rocket Resume's revenues of $11.62 million comprise at most 9% of the relevant market.  But the $750 million was an estimate of the ***global*** commerce affected—not limited to the relevant geographic market (the U.S.)  In any case, these

-20-

figures were estimates based on very limited information about an opaque industry, and subject to revision based on discovery. *See Newcal*, 513 F.3d at 1045. Such imprecision about the exact size and share of an opaque market like this one does not render Rocket Resume's allegations contradictory or conclusory, unlike those in the cases Defendants cite. *See, e.g.*, *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1200 (N.D. Cal. 2008) (finding Psystar's allegations of an Apple single brand product market "internally contradictory" with other allegations that Apple fended off competitive threats). Similarly, Rocket Resume need not identify every competitor in its pleadings, *see Newcal*, 513 F.3d at 1045; it has sufficiently defined the Market's composition, including by detailing the Market's participants (*e.g.*, ¶¶5-6, 28).

Finally, Rocket Resume demonstrates BOLD possesses monopoly power through both indirect or direct evidence. BOLD has maintained an 80-90% market share, created substantial barriers to entry, and excluded competitors. (¶¶8, 81, 118.) Thus, Rocket Resume demonstrates BOLD's monopoly power indirectly. *See CoStar*, 150 F.4th at 1070. There is also abundant direct proof of BOLD's monopoly power—including its ability to restrict Rocket Resume's and other competitors' capacity to increase output, resulting in supracompetitive prices. *See id.*; *supra* § II.A.

As the authority Defendants cite concedes, a plaintiff can make a *prima facie* showing of monopoly power by demonstrating a defendant holds at least "65% market share," *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1029 (N.D. Cal. 2021); *see also Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 699 F. Supp. 3d 1086, 1108 (D. Or. 2023) (finding allegation of "more than 95% market share" was "enough to plead market share"). Rocket Resume's allegations make clear that BOLD's market share is not temporary, especially as BOLD maintained it despite a 61% price increase. (¶68.) *See* Mot. 21. For over a decade, BOLD's conduct has created "substantial, artificial barriers to entry," which have restricted Rocket Resume's and other competitors' capacity to increase output. (¶81.) *See* Mot. 21. Moreover, unlike in Defendants' cited case *Maximum Availability Ltd. v. Vision Sols., Inc.*, 2010 WL 11508470 (C.D. Cal. Dec. 16, 2010), no competitor in the Online Resume-Building Platforms Market has been "progressively eroding" BOLD's "share of the marketplace." *Id.* at *3. Although Rocket Resume was able to capture a small slice of the

-21-

Market by 2023, Rocket Resume has since cut its marketing spend due to BOLD's conduct and experienced a 53% revenue decline.  (¶¶28-30, 169-170.)

## III. ROCKET RESUME PLAUSIBLY ALLEGES A SECTION 1 CONSPIRACY (COUNT III)

Defendants do not dispute Rocket Resume's allegation that BOLD controls and operates the various entities identified in the Complaint; they only respond that, if the allegations of control are true, then Rocket Resume cannot plead a Section 1 claim under the *Copperweld* doctrine.  Mot. 22. But Rule 8(d) permits Rocket Resume to plead in the alternative, which it has elected to do.  Rocket Resume agrees that to the extent that BOLD concedes it does wholly own and control all of the alleged entities involved in its scheme, then Rocket Resume will proceed under Section 2, rather than Section 1.  However, should BOLD not fully concede that point, BOLD's orchestration of coordinated bidding and pricing by these entities ***would*** constitute an unlawful agreement under Section 1 and the *Copperweld* doctrine does not apply.

BOLD concedes it partakes in "multi-brand ad-bidding," Mot. 15, and if these entities are distinct, that is bid rigging.  *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018) ("Bid rigging is, therefore, a per se violation of the Sherman Act.").  Defendants' reliance (Mot. 23) on *In re Musical Instruments and Equipment Antitrust Litigation* is misplaced.  798 F.3d 1186, 1193-94 (9th Cir. 2015).  *Musical Instruments* governs attempts to infer agreement from otherwise independent parallel conduct.  *Id.* at 1189.  No inference is required here.  (¶¶82-90, 97-98, 210-212.)

## IV. THE COMPLAINT PLAUSIBLY ALLEGES A UCL CLAIM (COUNT IV)

Rocket Resume alleges a plausible UCL claim under the unlawful and unfair prongs, is entitled to equitable relief, and has standing.  Conduct is actionable under the UCL "unlawful" prong if it violates the Sherman Act.  *In re Google Play Store Antitrust Litigation*, 2024 WL 4438249, at *2 (N.D. Cal. Oct. 7, 2024) (because "[t]he jury concluded that" the conduct "violated the Sherman Act … [Defendant] necessarily violated the unlawful prong of the UCL.").  Because Rocket Resume plausibly alleges BOLD's conduct violates the Sherman Act, it satisfies the unlawful prong.

Defendants also argue that Rocket Resume fails to satisfy the "unfair" prong because its claims under the Sherman Act and the UCL's "unlawful" prong are deficient.  But even were this

-22-

Court to identify a deficiency that would cause Rocket Resume's claims to be unactionable under the Sherman Act and the "unlawful" prong, the conduct remains independently actionable under the "unfair" prong. *Epic*, 67 F.4th at 1001 (finding that even "when a federal antitrust claim suffers from a *proof deficiency*, rather than a *categorical legal bar*, the conduct underlying the antitrust claim" can independently be actionable as "unfair" under the UCL); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187-188 (Cal. 1999) (permitting a UCL claim against a predatory-price scheme to proceed even though the plaintiff failed to prove—as state antitrust law requires—that the defendant intended to harm competition through the scheme). That Defendants insist the antitrust laws "plainly cover" Rocket Resume's antitrust theories, Mot. 24, does not defeat Rocket Resume's "unfair" claim. *Epic Games* holds that conduct covered by the antitrust laws remains independently actionable as "unfair" where the antitrust claims fail on proof rather than a categorical legal bar. 67 F.4th at 1001.

Defendants also mistakenly assert that Rocket Resume does not meet the standard for pleading an "unfair" act. There are three ways the unfair prong of the UCL can be satisfied as it applies to direct competitors. Plaintiffs must allege conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *See Cel-Tech*, 20 Cal. 4th at 186-87. Defendants cherry pick only the first two, ignoring that conduct that "otherwise significantly threatens or harms competition" is independently actionable. Defendants argue that Rocket Resume must point to an "unusual aspect of the conduct about which it complains that would make [it] something that violates the policy and spirit of the antitrust laws without violating the actual laws themselves." Mot. 24 (citations omitted). This is wrong; Defendants' own cases state the conduct at issue was found to not be "unfair" because it violated *neither* the antitrust laws *nor* their spirit. *See Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at \*10 (N.D. Cal. Aug. 7, 2015) ("[T]he conduct ATopTech challenges either is anticompetitive and thus simultaneously violates both the antitrust laws and their 'policy and spirit,' or it violates neither"); *Facebook, Inc. v. BrandTotal Ltd.*, 2021 WL 2354751, at \*15 (N.D. Cal. June 9, 2021) ("BrandTotal has not alleged unusual circumstances that would allow something other than an

-23-

antitrust violation to support an 'unfair' prong claim here."). Here, Rocket Resume alleges BOLD's conduct violates both the antitrust laws *and* their spirit, and thus adequately states a claim under the "unfair" prong. *Wi-Lan, Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1025 (S.D. Cal. 2019) ("[A] plaintiff that adequately alleges a claim for violation of the Sherman Act also adequately alleges a claim for violation of California's UCL under the 'unfair' prong."); *CoStar*, 150 F.4th at 1068 ("And because CREXi's claims under the UCL depend on the same underlying conduct as its §§ 1 and 2 claims, it also will have stated a claim under both the 'unfair' and 'unlawful' prongs of the UCL.").

Defendants argue that Rocket Resume fails to allege it lacks an adequate remedy at law, and that it improperly seeks both monetary damages and restitution for the same alleged conduct. Both of Defendants' cited authorities rested on overlapping claims for *restitution* rather than *injunctive relief*. Rocket Resume's UCL claims do not seek restitution; they seek injunctive relief against BOLD's unlawful behavior (¶¶218, 222), which cannot be resolved by monetary damages.

## V.     THE INDIVIDUAL DEFENDANTS ARE PROPERLY NAMED

Finally, the claims against the Individual Defendants are adequately pled. Defendants' argument that the Complaint's factual allegations are insufficient to provide notice fails. The Complaint expressly alleges that these executives devised and implemented the anticompetitive scheme and actively directed it. (¶¶1, 34-36, 39, 88, 91, 167, 200, 206, 216.) Nothing more is required. *In re California Bail Bond Antitrust Litigation*, 2020 WL 3041316, at *16 (N.D. Cal. Apr. 13, 2020) (denying motion to dismiss based on allegations of executives "directly participat[ing] in" and "approv[ing] and ratif[ying]" anticompetitive conduct).

Defendants misstate the law by arguing that to pursue antitrust claims against the Individual Defendants, Rocket Resume must allege their participation in "*per se* unlawful" conduct. No Ninth Circuit authority limits individual civil antitrust liability to "*per se* unlawful" conduct. Defendants rely on distinguishable cases. They first rely on *Arcell v. Google LLC*, a case in which defendants raised this same "*per se* unlawful" argument. 2025 WL 210877, at *4 (N.D. Cal. Jan. 16, 2025). However, those defendants only won dismissal because plaintiffs in that case "fail[ed] to respond to that argument" and "concede[d] it"—not because that is the law. *Id.* at *4. Defendants also rely on *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co., Ltd.*, 467 F. Supp. 841, 853 (N.D.

-24-

Cal. 1979). However, *Murphy Tugboat* concerned a motion for judgment notwithstanding the verdict. This case is at the **pleading** stage. Moreover, *Murphy Tugboat* itself recognizes that its "inherently wrongful conduct" language was "not intended to suggest that proof of unlawful intent is necessary to impose civil liability on officers." 467 F. Supp. at 853 n.7.

Federal courts have repeatedly declined to apply the *Murphy Tugboat* standard at the pleading stage. *See In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 962-63 (N.D. Cal. 2021) (holding "[t]hat debate does not need to be resolved now," and denying dismissal where directors' personal participation was alleged); *In re Dairy Farmers of Am. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 908-09 (N.D. Ill. 2011) (denying individual defendants' motion to dismiss for failure to allege "inherently wrongful conduct," declining to apply *Murphy Tugboat's* "inherently wrongful conduct" standard at the pleading stage, and noting that not "a single appellate court … affirmatively adopted such a standard"); *Monarch Marking Sys. v. Duncan Parking Meter Maint. Co.*, 1986 WL 3625, at *2 (N.D. Ill. Mar. 13, 1986) (rejecting the *Murphy* standard). In any case, the Complaint here does directly allege the Individual Defendants knowingly approved of inherently wrongful conduct. (¶¶1, 34-36, 39, 88, 91, 167, 200, 206, 216.) The Complaint alleges the Individual Defendants knowingly orchestrated an illicit scheme, involving widespread deception, to lock up distribution and sue rivals into oblivion. At the pleading stage, this is more than enough. *In re California Bail Bond Antitrust Litigation*, 2020 WL 3041316, at *17 (finding allegations that individuals "directly participated in the alleged conspiracy and that they approved and ratified of anticompetitive conduct" sufficient to overcome a motion to dismiss against those individual defendants).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety. In the alternative, any dismissal should be with leave to amend.

-25-

DATED: July 20, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    /s/ Sam S. Stake

Sam S. Stake (Cal. Bar No. 257916)
samstake@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600

David LeRay (*pro hac vice*)
davidleray@quinnemanuel.com
Scott Hartman (*pro hac vice*)
scotthartman@quinnemanuel.com
Steig D. Olson (*pro hac vice*)
steigolson@quinnemanuel.com
Jessica Y. Wu (*pro hac vice*)
jessicawu@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000

*Attorneys for Rocket Resume, Inc.*

-26-