Jack P. DiCanio (SBN 138782)
Caroline Van Ness (SBN 281675)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4660
Facsimile: (213) 621-5430
Email: jack.dicanio@skadden.com
Email: caroline.vanness@skadden.com

Evan R. Kreiner (*pro hac vice*)
Michael A. Lanci (*pro hac vice*)
Elizabeth R. Peled (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
evan.kreiner@skadden.com
michael.lanci@skadden.com
elizabeth.peled@skadden.com

Steven C. Sunshine (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com

*Attorneys for Defendants BOLD Limited, BOLD LLC, BOLD Holdings LLC, Douglas Jackson, James Freundlich, and Heather Williams Avior*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ROCKET RESUME, INC.,<br><br>      Plaintiff,<br><br>      v.<br><br>BOLD LIMITED, BOLD LLC, BOLD HOLDINGS LLC, DOUG JACKSON, JAMIE FREUNDLICH, and HEATHER WILLIAMS,<br><br>      Defendants. | Case No. 5:26-cv-02852-BLF<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br><br>Date: November 19, 2026<br>Time: 9:00 AM<br>Place: Courtroom 1 – 5th Floor<br>Judge: Hon. Beth Labson Freeman |

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

REQUEST FOR JUDICIAL NOTICE..................................................................................2

ARGUMENT...........................................................................................................................3

I.      The Court Should Dismiss RR's Monopolization and Attempt Claims (Counts I and II)..............................................................................................................................3

        A.      RR Fails to Plausibly Allege Anticompetitive Conduct or Antitrust Injury ............3

                1.      RR's "Course of Conduct" Theory Is Deficient .........................................3

                2.      RR Abandons Any Claim Based on Alleged Omissions and Statements .......................................................................................................6

                3.      BOLD's Alleged Ad-Bidding Conduct Is Not Actionable ..........................6

                4.      BOLD's Alleged Litigation Activity Is Not Actionable..............................9

        B.      RR Fails to Plausibly Allege Monopoly Power in a Relevant Market ..................11

II.     RR Fails to Plausibly Allege That BOLD Participated in a Section 1 Conspiracy ...........12

        A.      RR Confirms the *Copperweld* Doctrine Dooms its Section 1 Claim.....................12

        B.      RR's Section 1 Claim Fails on the Merits .............................................................13

III.    RR Fails to Allege Facts Sufficient to Establish Standing for a UCL Claim ...................14

IV.     The Court Should Dismiss All Claims Against the Individual Defendants.......................15

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*AliveCor, Inc. v. Apple Inc.*,
163 F.4th 1259 (9th Cir. 2026) ................................................................................7

*In re Apple Data Privacy Litig.*,
824 F. Supp. 3d 888 (N.D. Cal. 2026) ...............................................................7, 13

*Arista Networks, Inc. v. Cisco Systems Inc.*,
2018 WL 11230167 (N.D. Cal. May 21, 2018) ................................................9, 10

*Aventis Pharma S.A. v. Amphastar Pharmaceuticals, Inc.*,
2009 WL 8727693 (C.D. Cal. Feb. 17, 2009).........................................................10

*Browning v. American Honda Motor Co.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) ....................................................................2

*In re California Bail Bond Antitrust Litig.*,
2020 WL 3041316 (N.D. Cal. Apr. 13, 2020)........................................................15

*In re California Bail Bond Antitrust Litig.*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021)..................................................................15

*CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*,
150 F.4th 1056 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 1836 (2026) ............................8, 9, 12

*Crowder v. LinkedIn Corp.*,
2023 WL 2405335 (N.D. Cal. Mar. 8, 2023) ...........................................................3

*Day v. GEICO Casualty Co.*,
580 F. Supp. 3d 830 (N.D. Cal. 2022) ...................................................................13

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) ...........................................................................1, 3

*Element Biosciences, Inc. v. Illumina, Inc.*,
2026 WL 1497446 (N.D. Cal. May 28, 2026) ........................................................14

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ................................................................................14

*Farhang v. Indian Institute of Technology, Kharagpur*,
2010 WL 3504897 (N.D. Cal. Sept. 7, 2010) .........................................................13

*Federal Trade Commission v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) .................................................................................4

*Funai Electric Co. v. LSI Corp.*,
2017 WL 1133513 (N.D. Cal. Mar. 27, 2017) ....................................................9, 10

*Hightower v. Celestron Acquisition, LLC*,
2021 WL 2224148 (N.D. Cal. June 2, 2021) ..........................................................15

ii

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ................................................................................14

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
    527 F. Supp. 2d 1084 (N.D. Cal. 2007) ...........................................................................9, 10

*In re Juul Labs, Inc., Antitrust Litig.*,
    555 F. Supp. 3d 932 (N.D. Cal. 2021) ................................................................................15

*Lambrix v. Tesla, Inc.*,
    2023 WL 8265916 (N.D. Cal. Nov. 17, 2023).....................................................................14

*Malheur Forest Fairness Coalition v. Iron Triangle, LLC*,
    164 F.4th 710 (9th Cir. 2026) ..............................................................................................4

*Maloney v. Scottsdale Insurance Co.*,
    256 F. App'x 29 (9th Cir. 2007) ...........................................................................................13

*McWane, Inc. v. FTC*,
    783 F.3d 814 (11th Cir. 2015) ..............................................................................................8

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ..............................................................................................13

*Novation Ventures, LLC v. J.G. Wentworth Co.*,
    711 F. App'x 402 (9th Cir. 2017) .......................................................................................5, 6

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
    555 U.S. 438 (2009)..............................................................................................................7

*Pacific Surf Designs, Inc. v. Whitewater West Industries, Ltd.*,
    2024 WL 5200171 (9th Cir. Dec. 23, 2024) ........................................................................3

*Relevant Group, LLC v. Nourmand*,
    116 F.4th 917 (9th Cir. 2024) ..............................................................................................10

*Samsung Electronics Co. v. Panasonic Corp.*,
    747 F.3d 1199 (9th Cir. 2014) ..............................................................................................11

*T-Mobile US, Inc. v. WCO Spectrum LLC*,
    2025 WL 3247762 (C.D. Cal. Oct. 31, 2025) ......................................................................3

*Tyler v. Travelers Commercial Insurance Co.*,
    499 F. Supp. 3d 693 (N.D. Cal. 2020) ................................................................................6

*United States v. Dentsply International, Inc.*,
    399 F.3d 181 (3d Cir. 2005) ................................................................................................8

*Vox Network Solutions, Inc. v. Gage Technologies, Inc.*,
    2025 WL 929939 (N.D. Cal. Mar. 27, 2025) ......................................................................14

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
    549 U.S. 312 (2007)..............................................................................................................7

iii

*ZF Meritor, LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) ...................................................................................................8

iv

**INTRODUCTION**

Defendants explained in their motion that this case is a deficient effort to twist lawful conduct into an antitrust violation.[1]  RR confirms that premise in its opposition, abandoning much of its Complaint and failing to address dispositive Ninth Circuit caselaw.

First, RR tries to remediate its monopolization claims (Counts I and II) by casting BOLD's alleged conduct as an overall scheme that need not include any individually unlawful act.  That theory, however, runs headlong into Ninth Circuit caselaw that RR completely ignores, requiring "at least one 'individual action'" that "'rise[s] to anticompetitive conduct.'"  Mot. 8 (quoting *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022)).  And even absent this requirement, RR fails to state a claim:  The antitrust laws afford BOLD every right to pursue a multi-brand strategy, to place ads with a distribution partner, and to vindicate its IP rights through litigation, and the notion that BOLD has defrauded or coerced Google is altogether implausible.  When RR retreats to the alleged individual acts that comprise its claims, it reveals their glaring weaknesses: RR forswears establishing anticompetitive conduct through BOLD's purported silent ownership of its brands and predatory bidding in favor of a so-called "cost-raising exclusion" theory that finds no foundation in Ninth Circuit caselaw and a de facto exclusive dealing theory that makes no sense.  Meanwhile, unable to hide from the terms of its prior settlement with BOLD, RR retreats from its "sham litigation" theory in favor of an inapposite and unviable exception to *Noerr-Pennington*.

RR also fails to defend its monopoly power allegations.  RR makes no headway in trying to justify its gerrymandered relevant market, as its only recourse is to ask this Court to disregard its own contradictory sources that describe a broad marketplace with numerous major players and crucial substitutes that it arbitrarily excludes and to mischaracterize legal defects as factual disputes. RR similarly gains no ground in disputing the conclusory nature of its alleged market shares, which hold no water given its own market sizing, nor adequately explains how those shares can support an inference of durable monopoly power when it admits the presence of low barriers to entry.

Second, RR all but concedes the *Copperweld* doctrine dooms its Section 1 claim (Count III) and argues only that the claim may proceed as an alternative theory under Rule 8(d). But Rule 8(d)

---

[1] Unless otherwise noted, all defined terms are the same as those in Defendants' opening brief.

does not permit RR to ignore its allegations that BOLD owns the entities at the heart of its claims. And RR, in any event, makes no real attempt to explain how it has pled an unlawful agreement.

Third, RR confirms that the Court should dismiss its UCL claim (Count IV) because it ultimately concedes its UCL claim is premised entirely on its Sherman Act claims.

Fourth, RR does not meaningfully dispute that it does not assert any factual allegations against the Individual Defendants, much less facts showing they directed "inherently wrongful conduct." Instead, it simply regurgitates allegations that Defendants already explained were insufficient and asks this Court not to require it to meet the "inherently wrongful conduct" standard— a threshold that numerous other courts in this District have imposed. That effort falls short.

The Court should dismiss RR's Complaint in its entirety.

## REQUEST FOR JUDICIAL NOTICE

The Court should grant Defendants' limited request for judicial notice and incorporation by reference. Mot. 7. RR does not dispute the authenticity of the documents that form the request and concedes the Court may "tak[e] notice that" they "exist and say what they say." Opp. 5. Instead, RR challenges the request to the extent Defendants "ask the court to accept as true disputed facts," *id.*, which faces two insurmountable hurdles. First, RR misconstrues the request as to the webpages about which it complains. Defendants ask this Court not to notice those webpages (or BOLD's March 2026 letter) but to recognize them as incorporated by reference, Mot. 7—i.e., "as part of the complaint" the Court "may assume . . . [as] true," *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004 (N.D. Cal. 2021) (Freeman, J.) (citation omitted). Courts "routinely consider the full page of a website" as incorporated by reference, and thus assume its contents as true, where, as here, a plaintiff "selectively quote[s]" from it in a contradictory manner. *Id.* at 1004 (cleaned up). Second, RR faults Defendants for asking the Court to infer BOLD's prior lawsuit against it was not objectively baseless based on "the existence and terms of the parties' Binding Settlement Term Sheet," Opp. 6, but RR does not dispute the settlement's key monetary and injunctive terms, which is all BOLD requests the Court notice. That the existence of the settlement (and those terms) defeats RR's sham litigation allegations is an inconvenient fact RR cannot avoid through selective pleading.

2

## **ARGUMENT**

### **I.     The Court Should Dismiss RR's Monopolization and Attempt Claims (Counts I and II)**

RR admits it must plausibly allege "monopoly power in [a] relevant market, anticompetitive conduct, and antitrust injury" to state its monopolization-based claims, Opp. 6—but it fails to do so.[2]

#### **A.     RR Fails to Plausibly Allege Anticompetitive Conduct or Antitrust Injury**

RR tries to counteract its failure to plead anticompetitive conduct and antitrust injury by asking this Court to consider BOLD's alleged conduct "as a whole" and averring that some of that conduct is actionable on its own. Opp. 7–19. That effort falls flat. RR ignores Ninth Circuit caselaw that requires it to plausibly allege at least one individual anticompetitive act that caused it antitrust injury, and considering BOLD's alleged conduct as a whole does it no favors anyway. RR also fails to rectify its individual theories of harm, declining to defend its theories concerning BOLD's purported silent brand ownership and alleged predatory bidding, while pressing de facto exclusive dealing, "cost-raising exclusion," and anticompetitive litigation theories that make no sense.

#### **1.     RR's "Course of Conduct" Theory Is Deficient**

RR's premise that the Court must assess BOLD's alleged conduct only "as a whole," Opp. 8, is wrong. The Ninth Circuit's decision in *Dreamstime* requires RR to allege at least one "individual action" that "rise[s] to anticompetitive conduct" and caused it antitrust injury, Mot. 8 (quoting 54 F.4th at 1142), as "'there can be no synergistic result' from 'a number of acts none of which show causal antitrust injury,'" 54 F.4th at 1142 (citation omitted). RR never even addresses *Dreamstime*, which numerous courts in this circuit have interpreted to preclude claims where "no illegal acts [were] left in the broth," *Pac. Surf Designs, Inc. v. Whitewater W. Indus., Ltd.*, 2024 WL 5200171, at *1 (9th Cir. Dec. 23, 2024) (affirming dismissal), or that seek to "transform [] proper conduct into anticompetitive conduct." *Crowder v. LinkedIn Corp.*, 2023 WL 2405335, at *7 (N.D. Cal. Mar. 8, 2023); *see also, e.g.*, *T-Mobile US, Inc. v. WCO Spectrum LLC*, 2025 WL 3247762, at *9 & n.13 (C.D. Cal. Oct. 31, 2025) (dismissing where no "action . . . r[ose] to anticompetitive conduct"

---

[2] RR does not separately defend its monopolization (Count I) and attempted monopolization (Count II) claims, which confirms the Court should dismiss them for the same reasons.

| DEFENDANTS' REPLY IN SUPP. OF MOT. TO DISMISS | CASE NO. 5:26-cv-02852-BLF |
| --- | --- |

(citation omitted)). RR cannot change that precedent by pointing to contrary out-of-Circuit cases.

RR fails to state a claim based on a purported overall scheme anyway. Such a claim, after all, would fail for all the same reasons as its constituent parts: BOLD has every right under the antitrust laws to pursue a multi-brand strategy, to place ads with an independent distribution partner (i.e., Google), and to vindicate its IP rights through litigation. *See* Mot. 8–16; *infra* pp. 6–11. RR avers that Defendants' "piecemeal" framing "ignores" its allegations that BOLD "foreclose[d]" a "critical distribution channel" by violating "Google's 'Unfair Advantage' or 'Circumventing Systems' policies." Opp. 7–11. But RR's assertion that BOLD foreclosed it is not viable. Mot. 14–15; *infra* pp. 5–6. And though RR describes BOLD's alleged conduct as "deception" to Google, it fails to plead deception, much less with the specificity that Rule 9(b) requires, or under the six-factor test that applies to misrepresentation-based claims, as described in *Malheur Forest Fairness Coalition v. Iron Triangle, LLC*, 164 F.4th 710 (9th Cir. 2026) (which RR does not address), and the nearly identical *Novation* cases. Mot. 8–10. That RR states it does not "premise its Section 2" claim on a misrepresentation "predicate," Opp. 8, does not allow it to sidestep these requirements. The notion that BOLD has tricked Google by "switching [the] domain names" for one of its alleged brands' websites, Opp. 9, does not plausibly allege deception under any test in any event, particularly given RR's allegations that Google "takes its advertising policies seriously" and "employs . . . AI and human review to detect policy violations," Mot. 12 (quoting Compl. ¶ 115). Meanwhile, RR does not allege it ever even raised BOLD's alleged conduct with Google, as it would have (and should have) if BOLD were decimating its business. And the breach of a third-party's private policies, of course, sounds in contract, not antitrust. *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020) (noting "remedy for . . . breach" of commitments "was in contract or tort law").

RR also misfires in arguing that the Google policies target "the exact conduct" it alleges. The "Unfair Advantage" policy states that a company <u>may</u> place multiple ads in one location on Google if its products "offer distinct value to users," Opp. 4 (cleaned up) (quoting *Unfair Advantage*, Google, https://support.google.com/adspolicy/answer/15936768?hl=en), and RR's allegations concede that the purported BOLD brands have different features, Mot. 10 (citing Compl. ¶ 96). And the "Circumventing Systems" policy is concerned with "attempt[s] to use" Google "again by creating

4

new accounts" "[a]fter a previous suspension decision," *Circumventing Systems*, Google, https://support.google.com/adspolicy/answer/15938075?hl=en (emphasis added) (link cited at Compl. ¶ 111 & n.15; Opp. 4), while RR never alleges Google has suspended any BOLD account.

Nor can RR invent antitrust injury by lumping BOLD's purported acts together, as it fails to allege consumer harm or antitrust injury to itself. RR's theory of consumer harm posits that consumers face "lower market-wide output, [] supracompetitive prices, and low-quality offerings." Opp. 10. Such conclusory labels are not enough, as RR never explains how BOLD's alleged conduct caused market-wide prices to rise above, or quality to fall below, a competitive level. Mot. 14. The criticism that BOLD supposedly "raised prices by 61%" over three years, Opp. 10, says nothing about whether BOLD's (much less market-wide) prices were above such a level—only that RR (conclusorily) alleges a price change over a nearly three-year period. Even crediting that allegation, an increase is not a supracompetitive price absent some competitive benchmark, and RR pleads none. RR glosses over the fact that it "adopted [a] similar pricing" model as BOLD by noting that its "fee structure . . . indicates how [it] cannot put downward pressure on prices." *Id.* That makes no sense, especially when RR does not allege it ever even tried to compete via an alternative pricing model.

RR also does not establish causal antitrust injury to itself: RR's Complaint confirms that BOLD has not foreclosed it from any distribution channel, as it competes for and wins top sponsored and organic positions on Google. Mot. 14–15. Indeed, RR admits based on its own assumptions that it can make significant revenue from advertising on Google, including via the second- or third-position ad placements—an admission it never even tries to address in its opposition—and appears in organic results. Mot. 14–15. Nothing about viewing BOLD's conduct in the aggregate changes the fact that RR remains free to compete for ad placements on Google or to reach customers through the broader advertising market beyond Google. Moreover, RR can easily pursue a strategy like that it attributes to BOLD, particularly given the "low natural barriers" to entry it concedes. Mot. 15 (quoting Compl. ¶ 81). RR seeks to escape that conclusion by noting it cannot "follow[] suit" without itself engaging in "anticompetitive conduct," Opp. 11 (citation omitted), but that argument is circular, wrongly presupposing that RR's deficient allegations yield plausible anticompetitive conduct.

RR tries to distinguish the nearly identical *Novation Ventures v. J.G. Wentworth*, 711 F.

5

App'x 402 (9th Cir. 2017) ("*Novation IV*") in a last-ditch effort that falls flat, as *Novation* illustrates just why an overall scheme claim cannot stand here. RR argues that, unlike the *Novation* plaintiff, it pled that BOLD's conduct "restricted or foreclosed" it from competing by "preventing it from advertising." Opp. 13 (quoting *Novation IV*, 711 F. App'x at 404). That is simply wrong. Like the *Novation* plaintiff, RR fails to plead foreclosure because its allegations show "the whole advertising market was open to" it, "that market was not Google alone," and it "could compete for Google advertising" notwithstanding the alleged multi-brand strategy. 711 F. App'x at 404. As noted above (and in Defendants' brief), RR does not allege BOLD ever actually prevented it from profitably marketing itself on Google or elsewhere. *Supra* p. 5; Mot. 14–15. "[S]elling similar products under different brand names is not itself improper," and "[m]erely making it more difficult to succeed is not enough to show a violation"; indeed, the Ninth Circuit observed that it is "not plausible" to suggest "consumers are not wise enough to . . . scroll down farther than the first three entries" and that "even if [the defendant's] practices were somewhat misleading, that is far from a plausible pleading that [its] conduct is anti-competitive." *Novation IV*, 711 F. App'x at 404–05 & nn.8–9 (citations omitted). RR alleges the kind of vigorous competition the Ninth Circuit held inactionable.

**2.    RR Abandons Any Claim Based on Alleged Omissions and Statements**

RR expressly abandons any standalone theory that BOLD's alleged silence about its brands or statements about RR constitute actionable false advertising, misrepresentation, or disparagement. RR states that it "does not premise its Section 2 violation on any of these predicate claims," Opp. 8 (despite dedicating an entire section of its Complaint to them, Compl. ¶¶ 95–107). It thus "concedes these arguments." *Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020).

**3.    BOLD's Alleged Ad-Bidding Conduct Is Not Actionable**

RR's ad-bidding theory fails no matter how RR couches it. RR disclaims a predatory bidding theory and cannot rescue that theory by calling it "[c]ost-raising exclusion," and RR fails to plead de facto exclusive dealing since it does not allege any agreement or that BOLD compelled <u>Google</u> to deal with it exclusively. Opp. 12–14. Nor does RR plausibly allege any resulting antitrust injury.

*(i)    RR Disclaims Any Claim Based on Alleged Predatory Bidding*

RR disclaims any standalone theory that BOLD engaged in predatory bidding. Running far

6

from its extensive allegations surmising that BOLD engaged in "predatory bidding conduct" and "predatory overbidding," Compl. ¶¶ 14, 20, 85, 108, 120–22, 187, 198, 202, RR reverses course in its opposition, noting that it "does not bring a stand-alone predatory bidding claim," Opp. 14.

RR reframes its allegations as a so-called "[c]ost-raising exclusion" theory, Opp. 14, which fails for two reasons. First, RR, of course, "may not amend [its Complaint] through [its] brief[]." *In re Apple Data Priv. Litig.*, 824 F. Supp. 3d 888, 898 (N.D. Cal. 2026). Second, this novel theory advances a predatory bidding (or exclusive dealing) theory by another name. "'In [Section 2] cases where the alleged conduct falls within [] well-defined categories,' courts evaluate whether that conduct is anticompetitive using the applicable framework for that category," *AliveCor, Inc. v. Apple Inc.*, 163 F.4th 1259, 1267 (9th Cir. 2026) (citation omitted), to avoid "alchemiz[ing]" claims "into a new form of antitrust liability," *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (rejecting Section 2 claim where plaintiffs did not state refusal-to-deal or predatory-pricing theories under applicable frameworks). RR complains BOLD purportedly "bids the price of [a] critical input up[] to levels that force rivals to compete at a loss," Opp. 15, but that just describes predatory bidding, where a defendant "raise[s] prices for a key input to drive [competitors] out of business," *see Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 322 (2007). Applying the predatory bidding framework to such conduct is critical since that is "often the very essence of competition." *Id.* at 323 (citation omitted). RR does not cite one case that supports its "[c]ost-raising exclusion" theory, instead invoking two exclusive-dealing cases. Opp. 14.

RR's theory of this case fails under the predatory bidding framework (which RR disclaims) and under an exclusive dealing framework, rendering it inactionable. Mot. 12–14; *infra* pp. 7–9.

(ii)    *The Ad-Bidding Conduct Is Not De Facto Exclusive Dealing*

RR dedicates the bulk of its assault on BOLD's alleged ad-bidding conduct to its theory that the conduct amounts to de facto exclusive dealing, Opp. 12–14, which fails on two grounds.

First, RR does not plausibly allege the existence of any agreement between BOLD and Google—which dooms its exclusive dealing theory at the threshold. Mot. 13–14. RR wrongly suggests that Defendants demand a "formal contract which expressly requires exclusivity." Opp. 13. Defendants do not dispute that, in the Ninth Circuit, a plaintiff may premise an exclusive dealing

7

claim on an arrangement that is exclusive in practice rather than formally exclusive. A plaintiff does, however, need to plausibly allege an agreement in the first instance. Mot. 13. RR's cases confirm that uncontroversial point: In *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, for example, the Ninth Circuit explained that "[t]he foundation of 'any exclusive dealing claim'" under Section 1 or Section 2 "is an <u>agreement</u>." 150 F.4th 1056, 1072–73 (9th Cir. 2025) (emphasis added) (citation omitted). That foundational requirement makes good sense, as courts need to assess an agreement for terms from which it can infer actionable exclusivity. Indeed, in *CoStar*, the Ninth Circuit proceeded to infer de facto exclusive deals from "specific provisions" in the defendant's "contracts" that "forbid" customers from "providing [] data to [its] competitor[s]" and thus "in practice lock[ed them] into exclusive agreements." *Id.* at 1074. RR does not allege any agreement (or even an informal arrangement), let alone any terms that support a claim of exclusivity. Mot. 14.

<u>Second</u>, even assuming one could glean some arrangement between BOLD and Google from RR's allegations, RR does not identify anything resembling a <u>de facto exclusive dealing arrangement</u> because it points to no coercive terms, rebates, discounts, or other features that effectively required Google to exclusively show BOLD ads. Pleading a de facto exclusive dealing theory—a theory available in only "limited situations"—requires a plaintiff to allege "coercive circumstances." Mot. 14 (citation omitted). The cases RR cites confirm as much, turning on conditions where a "dominant firm" entered into "agreements [] contain[ing] 'specific features' that 'effectively coerced' [third] parties to work exclusively with" it. *CoStar*, 150 F.4th at 1073–74 (citation omitted).[3] RR identifies no analogous mechanism here—no rebate, discount, access rule, or loyalty condition that binds Google to BOLD in any way. Though RR harkens to its allegations that BOLD's alleged conduct "violates Google's [] policies," Opp. 14 (which are insufficient, *see supra* pp. 4–5), Google's policies

---

[3] *See also McWane, Inc. v. FTC*, 783 F.3d 814, 819, 833–35 (11th Cir. 2015) (program requiring distributors to buy all fittings from firm or risk losing rebates and access to firm's supply); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 185, 191, 193–94 (3d Cir. 2005) ("Dealer Criterion" precluding dealers from "add[ing] further [] lines to [] product offering"); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 275 (3d Cir. 2012) (rebate programs backed by purchase and volume targets).

8

are immaterial to whether BOLD engaged in de facto exclusive dealing with Google, as they are not features of any agreement that could support a finding that BOLD engaged in coercion. On the contrary, Google imposes them and they apply to all Google advertisers across the board. If anything, then, the policies (and any enforcement of them by Google) undermine RR's theory, as they demonstrate that Google ultimately controls its ad auctions and auction pricing and thus that BOLD cannot "lock" Google into an "exclusive agreement[]." *CoStar*, 150 F.4th at 1073–74.

(iii)    *The Ad-Bidding Conduct Did Not Cause Antitrust Injury*

Whether RR couches the alleged ad-bidding conduct as predatory bidding, exclusive dealing, or "cost-raising exclusion," one inescapable conclusion remains: It did not cause RR antitrust injury. RR does not argue BOLD's alleged ad-bidding conduct (on its own) caused antitrust injury—for good reason, given its failure to plausibly allege resulting consumer harm or injury to RR (which each require dismissal). Mot. 14–15. Instead, RR relies on its theory that BOLD's alleged conduct, in the aggregate, caused antitrust injury, Opp. 9–11, which fails to state a claim, *see supra* p. 5–6.

**4.      BOLD's Alleged Litigation Activity Is Not Actionable**

RR engages in further misdirection as to the litigation activity it alleges. While RR theorizes in its Complaint that BOLD engaged in a "sham litigation campaign," Compl. ¶¶ 198, 202–03, it does not dispute that *Noerr-Pennington* affords BOLD's litigation activity constitutional protection and that it fails to meet the sham exception to *Noerr-Pennington*. Nor can it, given its failure to allege any of BOLD's litigation activity was objectively baseless. Mot. 15–18. Instead, RR runs away from its pleaded theory, suggesting it is "misplaced," Opp. 18, and invoking a course of conduct exception to *Noerr-Pennington*—devised in *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084 (N.D. Cal. 2007)—that is inapplicable here and that the Ninth Circuit has never adopted.

First, even if the Court applied the *Hynix* framework, RR cannot satisfy its threshold requirement. *Hynix* requires courts to "find that [] other aspects of the scheme independently produce anticompetitive harms." 527 F. Supp. 2d at 1097. RR's authorities confirm this first step demands (as the Ninth Circuit's decision in *Dreamstime* in any event requires) a well-pleaded, independently anticompetitive non-petitioning practice, such as actionable "false FRAND commitments," *Funai Elec. Co. v. LSI Corp.*, 2017 WL 1133513, at *6 (N.D. Cal. Mar. 27, 2017), or an "open early, closed

9

late scheme," *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 11230167, at *12–15 (N.D. Cal. May 21, 2018).  RR, however, points only to BOLD's alleged ad-bidding practices, which are not actionable for the reasons explained above and in Defendants' opening brief.

Second, RR also cannot satisfy *Hynix*'s second requirement—that the lawsuit be "'causally connected' to the disputed anticompetitive conduct discussed in step one." *Id.* at *14 (citation omitted).  RR surmises there is a causal connection because BOLD's litigation activity is supposedly "an enforcement arm of" its purported "foreclosure scheme." Opp. 17.  That is not the sort of causal connection "to the disputed anticompetitive conduct" *Hynix* envisions, which RR's cases make clear. *Arista Networks*, 2018 WL 11230167, at *14 (emphasis added) (citation omitted).  In *Arista Networks*, for example, this Court inferred a connection from allegations that the defendant "carried out a long-time policy that encouraged . . . competitors to use [its 'command-line interface' ('CLI') technology] but reversed [that] policy," sued them for infringing on its CLI IP, and then "directly communicat[ed] with potential customers about the [] litigation." *Id.* at *1–2, *14–15.  In *Funai Electric*, this Court inferred a connection from allegations that the defendants made false FRAND commitments and then "not only refused to offer [plaintiff] licenses to three patents . . . , but also sued [it] for infringement of those patents." 2017 WL 1133513, at *1, *6.  And in *Hynix*, the Court inferred a connection between a defendant's misrepresentations "about its patent applications" and a later "litigation campaign to extract royalties" from those patents.  527 F. Supp. 2d at 1098.  RR never traces such a nexus from BOLD's alleged ad-bidding conduct to BOLD's litigation activity because it cannot: BOLD's alleged ad-bidding conduct relates to marketing practices, while BOLD's litigation activity relates to the protection of BOLD's IP.  They have nothing to do with one another.

Third, the Court should decline to adopt the *Hynix* standard in any event because it "conflates *Noerr-Pennington* immunity with the substantive § 2 element of antitrust injury" and is "doctrinally incorrect." *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, 2009 WL 8727693, at *8 n.7 (C.D. Cal. Feb. 17, 2009).  Years after a court devised the standard, the Ninth Circuit has not adopted it, recently identifying only "three circumstances" where a court might allow litigation-based claims to proceed, none of which included *Hynix*. *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 928 (9th Cir. 2024).

Fourth, RR does not dispute its litigation-based theory is time-barred, and instead attempts to

10

extend the limitations period by casting the litigation as part of an "ongoing scheme." Opp. 18. But RR has not alleged a "new and independent" act that inflicts "new and accumulating injury," *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202–03 (9th Cir. 2014) (citation omitted), and cannot create a timely claim by tacking time-barred conduct onto an alleged scheme that is not plausibly anticompetitive, Mot. 18. Nor does RR's reliance on BOLD's March 2026 demand letter save its claim, Opp. 19, as RR does not allege it suffered any new injury from that letter, Mot. 18.

### B.    RR Fails to Plausibly Allege Monopoly Power in a Relevant Market

RR does not cure the fatal contradictions inherent in its attempt to plead monopoly power—i.e., that its own sources demonstrate that it arbitrarily excluded numerous major players from its proffered market, its own allegations admit there are low barriers to entry (which its own rise echoes), and its own market sizing shows its alleged market shares make no sense. Mot. 19–21.

First, RR tries to defend its market definition by positing that it "explains in detail why Online Resume-Building Platform products are not substitutable" with various other products it describes in its Complaint. Opp. 19–20. Defendants explained that RR's own sources reveal that the resume-building space is "a crowded category with" up to "hundreds of options," that RR omits "gigantic companies" like "Canva and Indeed" from its proffered market, and that consumers view various alternatives as substitutes. Mot. 19–20. Rather than engage with those sources, RR urges the Court not to consider them, Opp. 20, which fails for all the reasons described above, *see supra* p. 2, and posits that Defendants merely dress up "factual disputes," Opp. 20, which is wrong. For one thing, courts may readily consider the contradictory nature of a plaintiff's allegations in assessing the plausibility of a relevant market. Mot. 19. For another, while RR plays up allegations that BOLD has purportedly "fooled commentators into thinking there is a 'crowded' market," Opp. 20, the Complaint itself contradicts that theory: In selectively relying upon the Sheets Article in its Complaint, RR admits that market participants like Sheets believe that "many of the top resume builders on Google are [purportedly] owned by" BOLD. Compl. ¶ 100.

Second, RR fails to explain why the Complaint's admission of "low natural barriers to entry," *id.* ¶ 81, does not doom its claim. RR merely recites its conclusory allegation that BOLD's alleged conduct has supposedly "created 'substantial, artificial barriers to entry,'" Opp. 21 (quoting Compl.

11

¶ 81). But that ignores RR's own meteoric rise from a single-founder startup in 2019 to an alleged $100 million valuation within five years, which demonstrates precisely the kind of competitor growth and entry capacity that precludes a plausible inference of durable monopoly power. Mot. 21.

<u>Third</u>, RR similarly fails to bolster its market share allegations. While Defendants explained that RR may not rely on conclusory market shares, Mot. 21, RR continues to do precisely that in its opposition—referencing its bare allegations that BOLD has "maintained an 80–90% market share," Opp. 21, which contradicts its allegations that RR possesses a 9% share of a $750 million industry, despite having only $11 million in sales, Mot. 21. RR pivots by suggesting that the "$750 million" figure "was an estimate of [] global commerce," Opp. 21, but that again appears to contradict the Complaint, which never mentions global commerce and instead suggests that BOLD's alleged conduct "affect[s] over $750 million worth of commerce annually in the Online Resume-Building industry and millions of jobseekers <u>in the United States</u>." Compl. ¶ 2 (emphasis added).

<u>Last</u>, RR supposes it has cleared the monopoly power threshold directly by alleging that BOLD maintained its market share "despite a [purported] 61% price increase" over a three-year period. Opp. 21. Even crediting that conclusory figure, RR never explains how it fared relative to prices market-wide, nor whether that price change was profitable. Mot. 20–21. By way of example, in the *CoStar* case RR cites throughout its opposition, the Ninth Circuit concluded that a plaintiff plausibly alleged monopoly power from allegations that the defendant "impose[d] prices much higher than those of its competitors for years"—based in large part on "specific examples of how [the defendant] increased its prices," by as much as "300 to 500%," just months after "driv[ing] . . . competitor[s] . . . from the market." 150 F.4th at 1069. RR's allegations come nowhere close.

## II.     <u>RR Fails to Plausibly Allege That BOLD Participated in a Section 1 Conspiracy</u>

RR confirms that the crux of its Section 1 claim runs afoul of the *Copperweld* doctrine and makes no real effort to defend the merits of that claim. Opp. 22.

### A.     <u>RR Confirms the *Copperweld* Doctrine Dooms its Section 1 Claim</u>

RR admits that it "cannot plead a Section 1 claim under the *Copperweld* doctrine" and instead seeks to proceed with its Section 1 claim solely as an alternative theory of liability under Rule 8(d). Opp. 22. Rule 8(d), however, offers no respite for RR—for at least two reasons.

12

First, RR cannot rely on "contradictory statements" to state an alternative claim when it clearly does not doubt its purported principal theory. *See Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022) (citation omitted) (Freeman, J.). BOLD's alleged ownership of the brands at issue here is the load-bearing premise of RR's Complaint: RR repeatedly and affirmatively alleges that the brands "operate under shared ownership," Mot. 22 (quoting Compl. ¶ 2), and that BOLD is the "real party of interest" behind them, *id.* at 4 (quoting Compl. ¶ 94). Indeed, RR refers to the brands as "BOLD's sham entities" in its Section 1 claim for relief. Compl. ¶ 212 (emphasis added). The central premise of RR's claims is entirely at odds with any alternative allegation to the contrary (and RR never even alleges that the brands are owned by different entities anyway).

Second, RR does not even plead its claim as an alternative in its Complaint. Courts dismiss claims where, as here, a plaintiff does "not indicate that [it] plead[s one] claim as an alternative to" another but rather "expressly 'incorporate[s] by reference and re-allege[s] . . . every allegation'" into that claim. *Apple Data Priv.*, 824 F. Supp. 3d at 897–98; *see also, e.g.*, *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31 (9th Cir. 2007). Nowhere does RR plead its Section 1 claim in the alternative; instead, it "incorporate[s] by reference" in its cause of action "as though fully set forth [t]herein" its allegations that BOLD owns and controls the entities it describes. Compl. ¶ 207.

### B.     RR's Section 1 Claim Fails on the Merits

Even if RR had pled this alternative theory in its Complaint, RR cannot "withstand a motion to dismiss" because "the complaint must contain factual allegations sufficient to support [the] theory," and RR has not alleged such facts. *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 3504897, at *2 (N.D. Cal. Sept. 7, 2010). RR fails to offer any allegations to support the notion that the various entities it describes in its Complaint are unaffiliated competitors, much less that those competitors agreed with one another to do anything, as Section 1 requires. RR avers that "[n]o inference" of agreement "is required here," Opp. 22, but a plaintiff must proceed inferentially where, as here, its allegations "lack direct evidence of [a] horizontal agreement," *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015). And the Complaint says nothing about "who is alleged to have conspired with whom, what exactly they agreed to, and how the alleged conspiracy was organized and carried out." *Id.* at n.5. Meanwhile, RR does not even defend the

13

failure of its Section 1 claim under the rule of reason and for lack of antitrust injury. Mot. 22–23.

### III.    RR Fails to Allege Facts Sufficient to Establish Standing for a UCL Claim

RR offers no reason why its UCL claim should survive, under any UCL prong.

First, by arguing "it satisfies the unlawful prong" because "BOLD's conduct violates the Sherman Act," Opp. 22, RR concedes its "unlawful" prong claim falls with its Sherman Act claims.

Second, RR all but confirms that its "unfair" prong claim overlaps entirely with its deficient claim under the "unlawful" prong, *id.* at 22–23, requiring dismissal, Mot. 23. RR tries to sidestep that shortcoming by highlighting the Ninth Circuit's observation in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), that in some circumstances, an "unfair" prong claim may proceed even when a related Sherman Act claim suffers from a proof deficiency. Opp. 23. But those circumstances are rare, requiring the plaintiff to "show there is an 'unusual aspect' of Defendants' conduct" that warrants liability. *Vox Network Sols., Inc. v. Gage Techs., Inc.*, 2025 WL 929939, at *5 (N.D. Cal. Mar. 27, 2025) (citation omitted). Courts since *Epic Games* have continued to dismiss unfair prong claims that, like RR's claims, "overlap entirely with" an unlawful prong claim predicated on deficient Sherman Act claims. *Lambrix v. Tesla, Inc.*, 2023 WL 8265916, at *9 (N.D. Cal. Nov. 17, 2023) (citation omitted); *see also Element Biosciences, Inc. v. Illumina, Inc.*, 2026 WL 1497446, at *10 (N.D. Cal. May 28, 2026). RR otherwise tries to meet the applicable standard for pleading an "unfair" act by making conclusory assertions that BOLD's alleged conduct violates the "antitrust laws and their spirit," and "otherwise significantly threatens or harms competition," Opp. 23–24 (cleaned up)—which are not enough.

Third, RR fails to explain how it has plausibly alleged inadequate remedies at law. Instead, it notes that "Defendants' [] authorities rested on overlapping claims for restitution" and clarifies that it "seek[s only] injunctive relief." Opp. 24 (emphasis omitted). But courts "in this Circuit," including this Court, have "extend[ed this requirement] to claims for injunctive relief." *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (Freeman, J.). RR's failure to meet the requirement here, where it seeks money damages that would compensate it for any alleged harm, dooms its claim.

Fourth, RR makes no effort to explain how it has UCL standing. Indeed, RR does not dispute that UCL standing requires a plausible showing of antitrust injury where, as here, the UCL claim is

14

DEFENDANTS' REPLY IN SUPP. OF MOT. TO DISMISS                    CASE NO. 5:26-cv-02852-BLF

premised on an antitrust theory. Mot. 24. And because RR has not plausibly alleged antitrust injury, it also lacks standing to pursue its UCL claim. The Court should dismiss RR's UCL claim.

## IV.   The Court Should Dismiss All Claims Against the Individual Defendants

RR fails to point to any allegations that give the Individual Defendants notice of the claims against them, much less that support their purported participation in "inherently wrongful conduct."

RR tries to avoid its notice-pleading obligations by contending it "expressly alleges that" the Individual Defendants "devised and implemented the [alleged] scheme and actively directed it." Opp. 24. But it points to the same benign factual allegations and the same conclusory allegations of personal involvement Defendants observed are not enough. Mot. 25. The lone case RR cites—*In re California Bail Bond Antitrust Litigation*, 2020 WL 3041316 (N.D. Cal. Apr. 13, 2020)—undermines its position. There, the plaintiff named two different companies' executives as individual defendants, alleging they led an industry-wide price-fixing conspiracy and made "multiple [specific] statements" to that effect (e.g., "urging members of the [] industry to recognize [] serious . . . threats to [the] industry and work collectively to repel them"). *Id.* at \*16 (cleaned up). Here, however, RR merely points to the Individual Defendants' titles and just generically suggests that they must have pushed forward the alleged (single-firm) "scheme." The cases could not be more different.

RR seeks to skirt its burden to plead that the Individual Defendants engaged in "inherently wrongful conduct" by asking this Court to disregard that burden. Opp. 25. Yet it points only to out-of-Circuit cases and one in-District case that reserved on the issue because the plaintiff, unlike RR, plausibly alleged a *per se* unlawful agreement and offered extensive allegations that individuals "were critical players in negotiating" that agreement, "often acting as [] points of contact," among others. *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 962 (N.D. Cal. 2021). RR ignores that the court in the *Bail Bond* case it cites applied the standard on the pleadings, 2020 WL 3041316, at \*17—and later used it to <u>dismiss</u> a defendant on the pleadings, *In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1051 (N.D. Cal. 2021). Other in-District decisions are in accord. *See, e.g., Hightower v. Celestron Acquisition, LLC*, 2021 WL 2224148, at \*11 (N.D. Cal. June 2, 2021).

### CONCLUSION

For these reasons, the Court should dismiss RR's Complaint.

DEFENDANTS' REPLY IN SUPP. OF MOT. TO DISMISS                                                    CASE NO. 5:26-cv-02852-BLF

DATED:  August 10, 2026

By: /s/ *Evan R. Kreiner*
Jack P. DiCanio (SBN 138782)
Caroline Van Ness (SBN 281675)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4660
Facsimile:  (213) 621-5430
Email: jack.dicanio@skadden.com
Email: caroline.vanness@skadden.com

Steven C. Sunshine (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760
Email: steven.sunshine@skadden.com

Evan R. Kreiner (*pro hac vice*)
Michael A. Lanci (*pro hac vice*)
Elizabeth R. Peled (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile:  (212) 735-2000
evan.kreiner@skadden.com
michael.lanci@skadden.com
elizabeth.peled@skadden.com

*Attorneys for Defendants BOLD Limited, BOLD LLC, BOLD Holdings LLC, Douglas Jackson, James Freundlich, and Heather Williams Avior*

16